

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-15-00042-CV

_____

ALLSTATE INSURANCE COMPANY, Appellant

V.

MARGARET JORDAN, Appellee

On Appeal from the 170th District Court
McLennan County, Texas
Trial Court No. 2014-243-4

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Burgess

OPINION

Following an accident with an underinsured motorist named Nickel Ford, Margaret Jordan sued Allstate Insurance Company under her underinsured motorist (UIM) benefits policy.[1] Jordan sought to recover the damages she suffered that were in excess of Ford's GEICO $25,000.00 policy limits and the $2,500.00 that Allstate had already paid for personal injury protection (PIP). A jury determined that Jordan was entitled to recover a total of $30,000.00 for her past medical care expenses, but awarded nothing for other areas of requested damages, including past physical pain. The trial court entered a declaratory judgment establishing that Allstate was entitled to a $27,500.00 offset and that Jordan was entitled to recover $3,110.60, including prejudgment interest, and attorney fees under the Uniform Declaratory Judgment Act (UDJA).

Both parties appeal from the trial court's judgment.[2] Allstate argues that (1) entry of a declaratory judgment was inappropriate, (2) the attorney fees awarded pursuant to the UDJA should be overturned, and (3) the trial court erroneously entered an unconditional award of attorney fees on appeal. By way of cross-appeal, Jordan argues that the jury's finding of zero dollars in damages for past physical pain was against the great weight and preponderance of the evidence. We conclude that, while declaratory judgment was appropriate, Jordan was not entitled to recover attorney fees. We also find that factually sufficient evidence supported the jury's zero dollar

---

[1]Jordan's husband, Arthur, had purchased an Allstate insurance policy, Policy No. 0291016236 (the Policy), which listed Jordan as an insured driver and provided her with uninsured/underinsured motorist coverage with a policy limit of $100,000.00.

[2]Originally appealed to the Tenth Court of Appeals in Waco, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We follow the precedent of the Tenth Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

damage award for past physical pain. Accordingly, we modify the judgment by deleting the award

of attorney fees and affirm the trial court's judgment, as modified.

## I.     A Declaratory Judgment Is an Appropriate Means of Resolving the Damages Phase of UIM Benefits Litigation

Lawsuits to recover UIM benefits are procedurally unique, often requiring a suit within a

suit. Under the Texas Insurance Code,

> Underinsured motorist coverage must provide for payment to the insured of all amounts that the insured is legally entitled to recover as damages from owners or operators of underinsured motor vehicles because of bodily injury or property damage, not to exceed the limit specified in the insurance policy, and reduced by the amount recovered or recoverable from the insurer of the underinsured motor vehicle.

TEX. INS. CODE ANN. § 1952.106 (West 2009). An insured can sue to recover UIM benefits, but

"[a] motorist is underinsured [only] if the available proceeds of his liability insurance are

insufficient to compensate for the injured party's actual damages." *In re Arcababa*, No. 10-13-

00097-CV, 2013 WL 5890109, at *7 (Tex. App.—Waco Oct. 31, 2013, orig. proceeding) (mem.

op.) (citing *Stracener v. United Servs. Auto Ass'n,* 777 S.W.2d 378, 380 (Tex. 1989)); *see Brainard*

*v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 812 (Tex. 2006). Therefore, as a prerequisite to

establishing entitlement to UIM benefits, a plaintiff must first establish (1) that she is legally

entitled to recover from an underinsured motorist and (2) that her damages exceed the policy limits

of the underinsured motorist's policy.[3]

---

[3]Pursuant to Section 1952.103 of the Texas Insurance Code,

> "[U]nderinsured motor vehicle" means an insured motor vehicle on which there is collectible liability insurance coverage with limits of liability for the owner or operator that were originally lower than, or have been reduced by payment of claims arising from the same accident to, an amount less than the limit of liability stated in the underinsured coverage of the insured's policy.

## A. Procedural History

Here, the issue of Ford's liability was not contested at trial.[4] After Jordan determined that her damages exceeded the $25,000.00 limt of Ford's GEICO policy, she settled her claims against Ford, with Allstate's permission, in exchange for payment of Ford's policy limit. Thus, this case revolved around whether Jordan's damages actually exceeded the limits of Ford's policy.

After settling with Ford, Jordan continued to receive medical treatment. In light of her increasing medical bills, Jordan filed a claim with Allstate to recover her remaining damages, which Allstate denied. According to Allstate, Jordan was attempting to recover for injuries that were previously sustained or were the result of intervening and superseding causes. In addition to stating that Jordan's injuries were not the result of the accident, Allstate's answer asserted its rights to all legal offsets and credits against the amount of medical bills actually paid or incurred by Jordan.

Jordan sued Allstate following the denial of her claim. In her petition, she asserted causes of action for breach of contract and for a declaratory judgment, asking the trial court to make the following declarations:

a. that Plaintiff's claim for underinsured motorist benefits under the Policy as a result of a motor vehicle accident which occurred on or about August 5, 2010 [was] covered under the Policy;

. . . .

c. that Plaintiff Jordan suffered compensable bodily injuries and damages as a result of that motor vehicle accident;

---

TEX. INS. CODE ANN. § 1952.103 (West 2009).

[4]On August 5, 2010, Ford crashed her car into the vehicle driven by Jordan. According to the police report, Jordan was stopped behind traffic at a red light and was struck from behind by Ford when the light turned green. The evidence suggests that Ford was on the telephone and was not paying attention to the traffic conditions at the time of the accident. Jordan claimed that Ford was traveling between forty and fifty miles per hour.

4

d.      that Plaintiff Jordan's compensable damages resulting from that motor vehicle accident [were] in excess of the policy limits of [Ford's GEICO policy];

e.      of the amount of compensation to which Plaintiff Jordan [was] entitled as a result of the motor vehicle accident with Ford for her personal injury damages, both in the past and in the future; and,

f.      of the amount of benefits payable by Defendant Allstate to Plaintiff Jordan under the Policy.[5]

On August 14, 2015, the trial court entered a modified judgment which decreed that the following facts were established in the dispute between the parties: (1) Jordan's claim for underinsured motorist benefits was covered under the Policy, (2) Ford's negligence was the proximate cause of the motor vehicle accident; (3) Jordan suffered compensable bodily injuries and damages as a result of the accident, (4) Jordan's compensable damages were in excess of the policy limits of Ford's GEICO policy, (5) Jordan was entitled to $30,000.00 for her personal injury damages, both in the past and in the future, and (6) after allowable credits, Allstate owed Jordan $3,110.60, including prejudgment interest.

## B.      Analysis of the Arguments

Allstate argues that the trial court's declaratory judgment was improper for the following reasons: (1) Jordan's claims did not implicate the UDJA; (2) under recent Texas Supreme Court precedent, the UDJA is not the proper vehicle for pursuing claims for underinsured motorists; and

---

[5]Although Jordan also sued Allstate for breach of the duty of good faith and fair dealing and alleged violations of the Texas Insurance Code, by agreed order, Jordan's "claims for extra-contractual violations" were severed from the lawsuit and abated "until the underlying declaratory relief and breach of contract claims . . . [were] resolved."

(3) declaratory relief is inappropriate where the true cause of action lies in breach of contract. We address and reject each argument in turn.

### 1. Jordan's UIM Claim Implicates the UDJA

The purpose of the UDJA "is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." TEX. CIV. PRAC. & REM. CODE ANN. § 37.002(b) (West 2015). "[I]t is to be liberally construed and administered." *Id.* A person interested under a written contract "may have determined any question of construction or validity arising under the instrument" and may "obtain a declaration of rights, status, or other legal relations thereunder." TEX. CIV. PRAC. & REM. CODE ANN. § 37.004 (West 2015).

Allstate contends that the UDJA was not implicated because there was never a question about the construction or validity of the Policy.[6] However, Allstate disputed whether Ford was an underinsured motorist because it had not yet been established that Jordan's damages exceeded the amount of her settlement with Ford. It also disputed whether Jordan's damages were in excess of Ford's policy limits. Under Section 1952.106 of the Texas Insurance Code, Allstate was required to provide, in its written policy, "for payment to the insured of all amounts that the insured [was] legally entitled to recover as damages." TEX. INS. CODE ANN. § 1952.106. Because Jordan had to demonstrate the amount that she was legally entitled to recover as damages as a prerequisite to proving her right to recover under the policy, Jordan properly invoked the UDJA to establish her rights under the Policy. *See Creative Thinking Sources, Inc. v. Creative Thinking, Inc.*, 74 S.W.3d 504, 514 (Tex. App.—Corpus Christi 2002, no pet.) (suit alleging plaintiff was not paid money

---

[6]It also contends that it stipulated that Jordan was an insured under the Policy, which was never offered into evidence.

6

due under the parties' contract presented a "justiciable controversy about the rights and status of the parties" sufficient to invoke the UDJA).

### 2. Nothing in Texas Supreme Court Precedent Precludes Use of the UDJA For Litigating UIM Claims

Although Allstate specifically agreed for the trial court to address both the declaratory judgment and breach of contract claims in this cause of action, it now argues that the UDJA cannot be a proper vehicle for establishing the prerequisites to recover UIM benefits. In support, it relies on the Texas Supreme Court's opinion in *Brainard*, 216 S.W.3d 809. *Brainard* explained that the insurer's duty to pay under a UIM policy is contractual in nature. Based on *Brainard*, Allstate argues that the proper cause of action for recovery of UIM benefits is breach of contract.

Yet, "[t]he Texas Supreme Court has held that a UM/UIM insurer has no contractual duty to pay benefits until the liability of the other motorist and the amount of damages suffered by the insured are determined." *Arcababa*, 2013 WL 5890109, at \*7 (citing *Brainard*, 216 S.W.3d at 815); *see Henson v. So. Farm Bureau Cas. Ins. Co.*, 17 S.W.3d 652, 653–54 (Tex. 2000). It has further clarified that an "insurer breaches the contract by withholding benefits after the insured has obtained a judgment establishing the liability and underinsured status of the other motorist." *Brainard*, 216 S.W.3d at 815.[7] Thus, *Brainard* states that a plaintiff seeking to obtain UIM benefits

---

[7]Jordan acknowledges that contract governs her entitlement to UIM benefits, but responds that a declaratory judgment was proper because the breach of contract action did not accrue until after the trial court entered judgment on liability and damages issues. In UIM cases, there is a significant difference between the date of accrual of a cause of action for limitation purposes and the date of breach. Although the breach cannot be established until after the liability and damages issues have been established, neither *Brainard* nor *Henson*, which addressed calculation of interest, stand for the proposition that the UIM cause of action does not accrue until after the liability and damages issues have been established. *See In re Teachers Ins. Co.*, No. 07-03-0330-CV, 2004 WL 2413311, at \*2 (Tex. App.—Amarillo Oct. 28, 2004, orig. proceeding) (mem. op.). Instead, "an insured's cause of action for uninsured motorist coverage accrues and the statute of limitations begins to run on the date the insurance company denies the claim." *De Bell v. Ohio Cas. Grp. of Ins. Cos.*, No. 14-96-00337-CV, 1996 WL 671258, at \*2 (Tex. App.—Houston [14th Dist.] Nov. 21, 1996, no

7

must demonstrate the existence of a duty or obligation that the opposing party has failed to meet, but does not clarify what causes of action may be brought in order to settle the liability and damages issues in the UIM litigation context.[8] We find that nothing in *Brainard* precludes the use of a declaratory judgment when establishing prerequisites to recovery in a UIM benefits case.

### 3. There is No Otherwise Available Remedy in a UIM Case that Precludes Use of the UDJA

Lastly, Allstate argues that Jordan brought a claim for breach of contract, and "the Declaratory Judgment Act is not available to settle disputes already pending before the court." *Nat'l Enter., Inc. v. E.N.E. Props.*, 167 S.W.3d 39, 43 (Tex. App.—Waco 2005, no pet.). Allstate is correct that "[t]here is no basis for declaratory relief if the party seeking such relief is already seeking a different, enforceable remedy, and a judicial declaration would add nothing to what would be implicit or express in a final judgment for the enforceable remedy" already being sought. *Durham Transp. Co. v. Beettner*, 201 S.W.3d 859, 873 (Tex. App.—Waco 2006, pet. denied) (quoting *Strayhorn v. Raytheon E-Sys., Inc.*, 101 S.W.3d 558, 572 (Tex. App.—Austin 2003, pet. denied)). However, due to the unique procedure of a UIM case, the duty of an insurance company

---

writ) (not designated for publication) (citing *Webster v. Allstate Ins. Co.*, 833 S.W.2d 747, 750 (Tex. App.—Houston [1st Dist.] 1992, no writ); *Alvarez v. Am. Gen. Fire & Cas. Co.*, 757 S.W.2d 156, 158 (Tex. App.—Corpus Christi 1988, no writ)).

[8]Allstate also argues that the underlying cause of action is a tort claim, since tort liability must be established. *See Henson*, 17 S.W.3d at 652; *Franco v. Allstate Ins. Co.*, 505 S.W.2d 789, 792 (Tex. 1974). Yet, Allstate concedes that it is not a tortfeasor. Thus, in cases where the tortfeasor has settled for the full amount of the policy limit, suing the insurance company to recover UIM benefits under a tort theory of recovery is not plausible.

to pay UIM benefits does not arise until liability is established.  Until that time, no remedy for breach of contract against the insurance company is actually enforceable.[9]

We conclude that a declaratory judgment is an appropriate method of establishing the prerequisites to recovery in a UIM benefits case.  Accordingly, we overrule Allstate's first point of error.

## II.    Jordan Was Not Entitled to Recover Attorney Fees at this Stage of the Litigation

Although we find that the UDJA is the appropriate procedure for asserting a UIM claim, we nevertheless find that attorney fees cannot be awarded to a plaintiff at this stage of a UIM benefits case.[10]  A plaintiff's suit against an insurer for recovery of UIM benefits asserts a cause of action for recovery of benefits under a written contract.  Thus, recovery of attorney fees is governed by Chapter 38 of the Texas Civil Practice and Remedies Code.  TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West 2015); *State Farm Mut. Auto. Ins. Co. v. Norris*, 216 S.W.3d 819, 822 (Tex. 2006).  Chapter 38 requires an insured to "present a claim" to the insurance company, which must pay that "just amount owed" within thirty days of presentation.  TEX. CIV. PRAC. & REM. CODE ANN. § 38.002 (West 2015).  Due to this language, the Texas Supreme Court has stated that an insured cannot "seek attorney's fees until, at the earliest, thirty days after the trial court render[s] judgment—assuming that [the insurer] refuse[s] to pay the amount due under the UIM

---

[9]Moreover, even if a breach of contract claim were available at this stage, the Texas Supreme Court has written that the existence of another adequate remedy does not exclude a declaratory judgment that is otherwise appropriate and that there is no automatic prohibition of declaratory judgment whenever a breach of contract claim is available. *MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 669 (Tex. 2009).

[10]We review the award of attorney fees under an abuse of discretion standard. *Nat'l Enter., Inc.*, 167 S.W.3d at 43.

9

contract."[11] *Norris*, 216 S.W.3d at 822; *see State Farm Mut. Auto. Ins. Co. v. Nickerson*, 216 S.W.3d 823, 824 (Tex. 2006); *see also Menix v. Allstate Indem. Co.*, 83 S.W.3d 877, 883 (Tex. App.—Eastland 2002, pets. denied).

Under the UDJA, however, "the court may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2015). Yet, the Texas Supreme Court has explained that an insurer has no duty to pay UIM benefits until the plaintiff has established that she is legally entitled to an amount of damages that exceeds the limits of the UIM's policy. Therefore, the insurer has the right to make the plaintiff meet the liability and damages prerequisites to UIM recovery, through litigation or otherwise. Consequently, requiring an insurer to pay attorney fees for exercising its right to require the plaintiff to establish its entitlement to recovery of UIM benefits under the policy would be inequitable and unjust under the UDJA.

Furthermore, if a plaintiff cannot recover under Chapter 38 until payment has been refused and more than thirty days have expired after presentment, and if presentment under Chapter 38 in a UIM case does not occur "until after the liability of the other motorist and the amount of damages suffered by the insured are determined," *Arcababa*, 2013 WL 5890109, at *7, then allowing recovery of attorney fees in UIM cases under the UDJA would create a special category of contract cases where attorney fees would be recoverable prior to presentment. The Supreme Court has made it clear that a UDJA claim cannot be used "as a vehicle to obtain otherwise impermissible attorney's fees." *MBM Fin. Corp.*, 292 S.W.3d at 669; *see Beettner*, 201 S.W.3d at 873.

---

[11]Allstate deposited a $14,456.33 supersedeas bond into the registry of the court when appealing the judgment.

10

The trial court awarded attorney fees in the amount of $22,500.00, provided that, "if Defendant does not appeal this Judgment to the court of appeals and time for appeal to that court has expired, Defendant shall be entitled to a remittitur of $15,000.00 against this Judgment for attorney's fees." We find that Jordan was not entitled to recover any attorney fees at this stage of the UIM proceeding. Accordingly, we sustain Allstate's second point of error and modify the judgment to delete the award of attorney fees.[12]

### III. Jury's Zero-Dollar Finding for Past Physical Pain is Supported by Factually Sufficient Evidence

The jury awarded $30,000.00 in damages for Jordan's past medical expenses, but awarded zero damages for past pain and suffering. "If the jury's failure to award damages or the amount of damages awarded is so against the great weight and preponderance of the evidence as to be manifestly unjust, shock the conscience, or clearly demonstrate bias, then a new trial would be required." *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 773 (Tex. 2003). Jordan argues that the trial court erred in failing to grant a new trial because the jury's finding of zero damages for physical pain was not supported by factually sufficient evidence. In order to assess the merits of Jordan's claim, we must briefly review the evidence presented to the jury.

#### A. The Evidence

Ford's negligence was not contested at trial. Allstate conceded that Jordan had sustained some injury as a result of the accident, but argued that she was attempting to recover damages for injuries that were not the result of the accident. Allstate encouraged the jury to thoroughly review

---

[12]Our ruling is dispositive of Allstate's complaint that the trial court erred in including an unconditional award of attorney fees on appeal.

11

Jordan's medical records and argued that pre-existing conditions and intervening and superseding causes would be documented there.

### 1. Pre-Existing Conditions

Jordan had several pre-existing conditions. In 1983, she had surgery on the lumbar area of her spine. Arthur testified that Jordan was depressed and experienced anxiety, chronic pain, and headaches.[13] Prior to the accident, Jordan had scheduled an appointment with Dr. James G. Sharp on September 13, 2010, at the Scott & White Clinic to be treated for depression. Jordan testified that two friends, her mother, her brother, and her dog had passed away that year. Her medical records indicated that her difficulty sleeping and depression had been particularly troublesome in the last few months.

### 2. The Accident and Jordan's Injuries

The accident occurred on August 5, 2010. Jordan's 2001 Cadillac Seville was totaled. Pictures of the car revealed damage to its bumper. Jordan testified that she felt a burning sensation in her neck upon impact. She declined medical treatment at the scene, but had Arthur drive her to Scott & White to see her family doctor, Edward Cooney, M.D. Jordan complained to Cooney of pain in her neck and shoulders and minimal pain across her chest. Cooney noted that Jordan had normal range of motion in her neck, no head injury or injury to her arms, and "no significant distress" and concluded that Jordan was suffering from whiplash.

---

[13]Arthur also testified that Jordan had hypothyroidism, hyper cholesterol, a left bundle branch block in her heart, and colon polyps before the accident. Her medical records showed that she had gastric bypass surgery.

On August 31, 2010, Jordan returned to Cooney for neck pain, although she stated that she was "somewhat better." Cooney noted that, although Jordan had some pain on turning her head to the right, she had good range of motion and no weakness in her upper extremities. Cooney instructed Jordan to continue with chiropractic treatment, anti-inflammatory medication, and muscle relaxers.

### 3. Jordan's Fall In Her Garden

On September 14, 2010, Jordan was out "in the garden [when] she tripped over a brick and landed on [another] brick, striking her nose." As a result of that fall, she broke her nose in three places. Jordan was treated at Hillcrest Baptist Medical Center for her broken nose and a minor injury to her finger. Jordan claimed that she fell because she was dizzy from the medication that had been prescribed for the injuries she sustained as a result of the accident.

### 4. Jordan's Medical Treatment Prior to Trial and the Parties' Positions

Between the date of the accident and the time of trial, Jordan visited several doctors and received medical treatment for a variety of symptoms. She continued with treatment from Cooney. She received chiropractic treatment from Dr. David Q. Moore from October 4, 2010, through May 2011. She continued to see Dr. Sharp at Scott & White for her depression and chronic pain associated with her neck injury. And in 2013, she saw a neurosurgeon, Dr. Bruce Hamilton.

Essentially, her medical treatment after the accident revealed that she suffered a whiplash injury and was improving with good range of motion and no weakness in her upper extremities prior to her intervening fall in her garden. After her fall, she continued to report problems similar to those received in the accident, namely, chronic neck pain, headaches, memory problems,

13

dizziness, problems sleeping, depression, and numbness and tingling in her arms and fingers. At times, the records indicated that her conditions were improving, and at other times, they indicated that her conditions were worsening. Jordan related all of the problems to the accident, and Allstate attributed the majority of the problems to the garden fall, which it believed was an intervening and superseding cause.

### 5. Jordan's Trial Testimony

At trial, Jordan claimed that she had been unable to turn her head without pain since the accident, that she had pain in her neck, arms, and shoulders, and that her pain was a 10 out of 10.[14] She also added that she experienced occasional pain in her left leg and that her face would "go numb . . . when it [got] real bad." Jordan stated that she obtained relief from the chiropractic treatments, but that her pain would return before the next treatment. Although Jordan was still taking tramadol and gabapentin for pain, she claimed that she could no longer participate in Zumba, walk, pick up her grandson, or ride motorcycles. Jordan also testified that she could not sleep, had gained eighty pounds, and was still taking Cymbalta for depression and that her memory had been affected by the accident.[15]

Jordan admitted that she had spinal surgery before the accident, but claimed that the accident did not aggravate any pre-existing condition. She also testified that, although she

---

[14]Jordan's niece, Cathy Burrow, testified that Jordan claimed her neck and arm pain was from the accident.

[15]Jordan also claimed that she could not work full time as a result of the accident. She testified that she was a self-employed medical aesthetician and that doctors referred patients to her so she could teach them how to apply their makeup and care for their skin. Jordan testified that, before the accident, she saw ten to thirteen patients per day, five times a week, and that her profit was $80.00 per patient. After the accident, Jordan claimed that she could only see eight patients per day, two times a week, and that she was limited because of neck and arm pain.

sustained a fall which broke her nose, the pain in her neck was the same before the fall as it was after the fall. Although surgery was recommended for Jordan, she testified that she had not scheduled a surgery and had no pending appointments with any doctors or chiropractors.

### 6. Hamilton's Trial Testimony

Hamilton was the only doctor to testify at trial. He stated that he examined Jordan on February 25, 2013, for neck pain and left arm weakness and numbness following a motor vehicle accident. Hamilton testified that he took Jordan's history and conducted a physical examination. His physical examination revealed that Jordan had numbness in her hand, her gait was very abnormal due to her poor balance, and her range of motion was significantly impaired, but her motor examination was normal. Hamilton also reviewed an MRI from March 2011 which, in his opinion, showed some degenerative changes and a disc bulge at C6-7.

Hamilton explained that the pain associated with a bulging C6-7 disc radiates from the neck down through the arm and can extend all the way down into the fingers and that a protrusion at this point could also cause vertigo and numbness. He conducted another x-ray which revealed degenerative bone spurs at C5 and confirmed the small central disc protrusion at C6-7. Hamilton opined that, based on Jordan's patient history, the accident was the cause of her injuries. Hamilton stated that Jordan needed surgery, that the surgery would cost $15,994.00, and that she would have pain and other symptoms in the future for the rest of her life without the surgery.

During cross-examination, Hamilton agreed that Jordan's decreased range of motion in her neck and her degenerative disc condition could also be due to her age. While he testified that he did not believe that the disc protrusion at C6-7 was a degenerative change, Hamilton testified that

15

he did not know about her fall in her garden. He further admitted that the fall could have caused Jordan's injuries. He also added that it was common for patients to have the same or similar symptoms that Jordan did without having experienced an automobile accident.

During closing arguments, Allstate argued that Jordan's medical records reflected only neck pain and headaches from whiplash, that Jordan's whiplash should have been cured in six to eight weeks, but that the September 2010 fall was the cause of her continued injury.

## B.    Standard of Review

When, as here, a party attacks "an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam). In making this determination, we "must consider and weigh all of the evidence, and [will] set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *Id.* (citing *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986)). "[T]he jury is the sole judge of the credibility of the witnesses and the weight to be given to their testimony." *Golden Eagle Archery*, 116 S.W.3d at 761. We are not fact-finders; accordingly, we may not pass upon the witnesses' credibility or substitute our judgment for that of the jury, even if the evidence would clearly support a different result. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998).

## C. Analysis

First, Jordan argues that, by awarding virtually all of her past medical expenses,[16] which included treatment for pain, the jury must have rejected Allstate's argument that the fall was an intervening and superseding cause of her injuries. Therefore, she concludes that the jury's finding of zero dollars for past physical pain was inherently inconsistent with its award of medical care expenses. Yet, in *Morse v. Delgado*, the Waco Court of Appeals specifically rejected that argument. *Morse v. Delgado*, 975 S.W.2d 378, 385 (Tex. App.—Waco 1998, no pet.). Following the precedent of the Waco Court in this transfer case, we reject Jordan's argument that an inherent inconsistency required the jury to award damages for past physical pain. *See also In re State Farm Mut. Auto. Ins. Co.*, 483 S.W.3d 249, 264 (Tex. App.—Fort Worth 2016, orig. proceeding) ("[A] damage award for physical pain is not always mandated when medical expenses are awarded.") (quoting *Enright v. Goodman Distribution, Inc.*, 330 S.W.3d 392, 398 (Tex. App.—Houston [14th Dist.] 2010, no pet.)); *Dollison v. Hayes*, 79 S.W.3d 246, 253 (Tex. App.—Texarkana 2002, no pet.). Instead, we simply look to whether the verdict was supported by factually sufficient evidence.

"Matters of pain and suffering . . . are necessarily speculative, and it is particularly within the jury's province to resolve these matters and determine the amounts attributable thereto." *Lanier v. E. Founds., Inc.*, 401 S.W.3d 445, 455 (Tex. App.—Dallas 2013, no pet.). "When uncontroverted, objective evidence of an injury is presented and the causation of the injury has been established, courts are more likely to overturn jury findings of no damages for past physical

---

[16]Jordan presented evidence at trial that she had incurred $31,937.54 in past medical expenses.

17

pain and impairment." *Id.* (citing *Blizzard v. Nationwide Mut. Fire Ins. Co.*, 756 S.W.2d 801, 804–05 (Tex. App.—Dallas 1988, no writ); *Byrd v. Westerhof*, No. 03-00-00180-CV, 2001 WL 101517, at *3 (Tex. App.—Austin Feb. 8, 2001, no pet.) (not designated for publication)). This is because "the jury cannot ignore uncontroverted evidence of injury in denying any recovery for past physical pain." *Schaffer v. Nationwide Mut. Ins. Co.*, No. 13-11-00503-CV, 2013 WL 2146833, at *2 (Tex. App.—Corpus Christi May 16, 2013, pet. denied) (mem. op.) (citing *Golden Eagle Archery*, 116 S.W.3d at 775 ("[A] verdict awarding no damages for pain and suffering should [not] be upheld on appeal if there is objective, undisputed evidence of a significant injury and the jury could not have compensated the injured party in some other category of damages.")). "On the other hand, if the indicia of injury are more subjective than objective in nature, appellate courts are generally more reluctant to hold a jury finding of no damages contrary to the great weight and preponderance of the evidence." *Lanier*, 401 S.W.3d at 55 (citing *Blizzard*, 756 S.W.2d at 805; *Byrd*, 2001 WL 101517 at *3); *see Schaffer*, 2013 WL 2146833, at *2 ("[W]here the evidence of pain is conflicting, scant, or more subjective than objective, a jury's zero-damages finding is not against the great weight and preponderance of the evidence.").

Jordan argues that she suffered headaches and shoulder pain and presented "stacks of objective evidence of medical treatment for neck pain beginning on the day of the accident and continuing for another three and a half years."[17] Allstate argues that the only injury that was caused

---

[17]Jordan's brief does not clarify whether she is arguing that the jury should have awarded damages for physical pain as a result of injuries to her arm.

by the accident was whiplash.[18] We find that the jury could have determined (1) that some of the pain Jordan suffered was not the result of the accident and (2) that the pain Jordan did suffer as a result of the accident was not so serious that it required compensation.

"[W]hen there is conflicting evidence of the injury's cause or an alternative explanation for the injured party's reported pain, appellate courts have upheld zero damage findings for physical pain despite the jury finding that the injured party is entitled to damages for medical expenses." *State Farm Mut. Auto. Ins. Co.*, 483 S.W.3d at 264 (citing *Grant v. Cruz*, 406 S.W.3d 358, 364 (Tex. App.—Dallas 2013, no pet.); *Enright*, 330 S.W.3d at 398); *see Lanier*, 401 S.W.3d at 455; *Hyler v. Boytor*, 823 S.W.2d 425, 427–28 (Tex. App.—Houston [1st Dist.] 1992, no writ) (upholding zero damages for pain and suffering despite medical expenses award where jury heard evidence of other potential causes of plaintiff's injuries). The jury in this case heard that Jordan had mild disc degeneration throughout the cervical spine that could have been the result of normal aging and that Jordan's injuries could have been the result of the hard fall she sustained five weeks and a few days after the accident. Dr. Moore wrote, "Ms. Jordan has a pre-existing mild left lateral curvature . . . of the thoracic spine that is not the result of this injury; however, the changes in joint biomechanics increased the susceptibility of that area to more damage with less trauma." Accordingly, the jury could have concluded that the injuries that were not documented before Jordan's fall were attributable to the fall.

---

[18]Allstate also argues that no medical expert testified that Jordan's neck injury was caused by the accident and that the injuries could have been degenerative.

19

Moreover, without qualification, Jordan's husband, Arthur, testified that Jordan suffered from headaches and chronic pain before the accident. When Jordan originally saw Cooney after the accident, Cooney noted that Jordan was not in significant distress, had normal range of motion in her neck, and did not have any head or arm injuries. The jury also saw the amount of damage caused to the bumper on Jordan's car, which the jury could have considered to be minimal, in spite of the fact that the car was considered a total loss by the insurance company. Cooney determined that Jordan had whiplash and instructed her to return if her pain worsened. Aside from a telephone call to report experiencing side effects from Flexeril, Jordan did not seek further medical treatment for ten days. When she returned to the doctor, she informed him that she had not taken her prescribed pain medication for one week. Although an MRI was recommended, Jordan did not have it done.

In light of this evidence, the jury could have concluded that whiplash was the only injury suffered by Jordan prior to her fall, and "[t]he mere fact of injury . . . does not prove compensable pain and suffering." *Dollison*, 79 S.W.3d at 250. As the Fort Worth Court of Appeals has observed,

> For an undisputed injury that is less serious and accompanied only by subjective complaints of pain, a jury may reasonably believe that the injured party should be compensated "for seeking enough medical care to ensure that [the] injury was not serious" yet also conclude the injured party "never suffered pain warranting a money award." *Blizzard*, 756 S.W.2d at 805; *see also McGuffin* [*v. Terrell*,] 732 S.W.2d [425,] 428 [(Tex. App.—Fort Worth 1987, no writ)] (stating that "evidently the jury found appellant's injury so minimal as to not warrant an award for past pain and suffering" despite the jury's award of medical expenses for treatment of muscle spasms"); *Chadbourne v. Cook*, No. 05-99-00353-CV, 2000 WL 156955, at *2 (Tex. App.—Dallas Feb. 15, 2000, no pet.) (not designated for publication) (stating that "the jury could reasonably conclude any pain and suffering [one of the

20

plaintiffs] endured was too negligible to warrant monetary compensation" despite the jury's award of medical expenses for treatment of his nose injury).

*State Farm Mut. Auto. Ins. Co.*, 483 S.W.3d at 264 (first and fifth alterations in original).

Here, the jury could have determined that, if Jordan was in extreme pain, she would have been taking the pain medications that were prescribed to her and would have had the MRI done. They could have also compared her trial testimony against Dr. Sharp's January 8, 2013, note where Jordan rated her pain "as a 3 without medication, 0 with medication" and Sharp's other notes classifying Jordan's comfort level and functional status as "fair to good." The jury could have also determined that Jordan was not suffering from the pain she described at trial because, although Hamilton recommended surgery, Jordan had no pending appointments with any doctors. In making a credibility determination, the jury may have weighed Jordan's claim that her depression and mental anguish were caused by the accident against the fact that Jordan had already scheduled an appointment to discuss depression resulting from losses she had sustained before the accident. Lastly, the jury could have determined it impossible to separate any whiplash injury suffered by Jordan as a result of the accident from her pre-existing chronic pain condition.

Because the jury could have determined that Jordan's pain did not result from the accident, or was not so serious that monetary compensation was required, we conclude that the finding of zero damages for past physical pain is not so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. Accordingly, the trial court did not err in denying Jordan's motion for new trial on this ground.

21

## IV.    Conclusion

We modify the trial court's judgment by deleting the award of attorney fees and affirm the

judgment, as modified.


                                        Ralph K. Burgess
                                        Justice

Date Submitted:        May 11, 2016
Date Decided:          July 29, 2016