# IN THE SUPREME COURT OF TEXAS

═══════════

No. 19-0885

═══════════

ALLSTATE INSURANCE COMPANY, PETITIONER

V.

DANIEL WES IRWIN, RESPONDENT

═══════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS

═══════════════════════════════════════

**Argued January 7, 2021**

JUSTICE DEVINE delivered the opinion of the Court, in which JUSTICE LEHRMANN, JUSTICE BOYD, JUSTICE BLACKLOCK, and JUSTICE BUSBY joined.

CHIEF JUSTICE HECHT filed a dissenting opinion, in which JUSTICE GUZMAN, JUSTICE BLAND, and JUSTICE HUDDLE joined.

Underinsured motorists have liability insurance but not enough to pay for all the damage they have caused. Underinsured motorist coverage is insurance designed to fill the gap between the insured's damages from an accident and the other driver's ability to pay. Sounds simple enough, but presenting a claim to your insurance carrier for underinsured motorist benefits is not like other claims under an automobile liability insurance policy.

In *Brainard v. Trinity Universal Insurance Co.*, we held that an underinsured motorist (UIM) carrier "is under no contractual duty to pay benefits until the insured obtains a judgment

establishing the liability and underinsured status of the other motorist." 216 S.W.3d 809, 818 (Tex. 2006). If not otherwise determined, however, a judgment establishing these prerequisites to coverage may be obtained in a direct action against the insurance carrier. *See id*. (citing *State Farm Mut. Auto. Ins. Co. v. Matlock*, 462 S.W.2d 277, 278 (Tex. 1970)). The question here is whether an insurance carrier's liability for benefits under the UIM policy may be established in a declaratory judgment action. *See* TEX. CIV. PRAC. & REM. CODE §§ 37.001–.011. The court of appeals determined that the Uniform Declaratory Judgments Act can be used for this purpose and affirmed the trial court's judgment to the same effect. 606 S.W.3d 774 (Tex. App.—San Antonio 2019). We agree and affirm as well.

## I

On April 5, 2016, Daniel Irwin was injured in a vehicular accident with an underinsured motorist. At the time of the accident, Allstate Insurance Company insured Irwin's truck. Irwin's policy included UIM coverage up to $50,000. Irwin settled with the other driver for her $30,000 policy limits, and followed the settlement with a letter to Allstate, seeking his UIM policy limits of $50,000. Allstate offered to settle for $500. Believing Allstate's offer inadequate, Irwin sued. In this direct action against his UIM carrier, Irwin sought a determination of his damages from the accident, a declaratory judgment that he was entitled to recover under his UIM policy, and attorney's fees. Irwin's pleadings invoked the Uniform Declaratory Judgments Act (UDJA) for all relief.

Allstate's answer denied Irwin's claim to UIM benefits under the policy, both generally and specifically, and demanded a jury trial. Before trial commenced, the parties stipulated to

Irwin's coverage under the UIM policy and to Allstate's entitlement to an offset from Irwin's $30,000 settlement with the other driver. The case was tried to a jury, with Allstate contesting Irwin's evidence of causation and damages.

The jury found Irwin's damages from the accident to be $498,960.36. This sum included his medical expenses, physical pain and mental anguish, physical impairment, and lost earnings. Irwin moved for entry of judgment. Allstate objected to Irwin's proposed judgment insofar as it awarded attorney's fees or invoked the UDJA, but otherwise agreed that it owed its UIM policy limits and court costs, both of which it tendered to Irwin. The trial court's judgment acknowledged Allstate's payment of its policy limits and court costs and awarded Irwin his attorney's fees.

Allstate appealed the award of attorney's fees. The court of appeals affirmed the award, holding that the UDJA was properly invoked to determine Irwin's entitlement to UIM benefits under the policy and a proper basis for the award of attorney's fees. 606 S.W.3d at 778–80. Allstate appeals, complaining that Irwin's use of the UDJA to determine his contractual rights and to seek attorney's fees in a UIM case impermissibly circumvents this Court's decision in *Brainard*.

## II

*Brainard* was a vehicular accident case that involved a similar underinsured motorist claim. As in this case, the insured sought UIM benefits from his insurance carrier after settling for the other driver's policy limits. *Brainard*, 216 S.W.3d at 811. The insured settled his tort claim before obtaining a judgment against the third-party tortfeasor. *Id*. at 811–12. Because

3

there had been no determination of liability and damages in the underlying tort case, the carrier declined to pay the UIM claim. *Id*. at 811. The insured sued for breach of contract. In the ensuing lawsuit, a jury determined liability and damages in the underlying tort case. *Id*. at 812. Based on the jury's findings as to the third-party tortfeasor's liability and the insured's damages, the trial court rendered judgment for the insured, awarding UIM benefits under the policy and attorney's fees under Chapter 38 of the Civil Practice and Remedies Code. *Id*.; *see* TEX. CIV. PRAC. & REM. CODE § 38.001(8) (authorizing the recovery of attorney's fees in a successful breach-of-contract suit).

In the appeal that followed, we reversed the award of attorney's fees, observing that the insurance carrier had not breached the policy by refusing to pay UIM benefits, absent the prerequisites for payment. *Brainard*, 216 S.W.3d at 818. We reasoned that the carrier was under no legal obligation to pay those benefits until the insured obtained a judgment establishing the liability and underinsured status of the other motorist. *Id*. Until those determinations are made, we explained, "no contractual duty to pay" arises and "no just amount [is] owed." *Id*. And, without a liquidated amount due under the contract, no basis existed for an award of attorney's fees under Chapter 38. *Id*. at 819. In passing, however, we noted that the insured is not required to litigate these issues against the third-party tortfeasor, but may instead settle the tort claim and litigate UIM coverage with the insurer. *Id*. at 818.

*Brainard* does not explain what form this litigation should take beyond commenting on the unique nature of the UIM contract, which conditions benefits "upon the insured's legal entitlement to receive damages from a third party." *Id*. UIM claims are, of course, "contractual

in nature." *Allstate Ins. Co. v. Bonner*, 51 S.W.3d 289, 291 (Tex. 2001). "[A]lthough ultimate recovery in this type of action depends upon proof of damages due to the tort of an uninsured [or underinsured] third party, the cause of action against the insurer arises by reason of the written contract." *Franco v. Allstate Ins. Co.*, 505 S.W.2d 789, 791–92 (Tex. 1974). Thus, the litigation between the insured and his carrier is on the UIM contract but not for its breach, which cannot occur until the underlying conditions precedent of liability and damages are established. *Brainard*, 216 S.W.3d at 814–15.

Since our decision in *Brainard*, several courts have concluded that a declaratory judgment action is the appropriate remedy for determining the underlying tort issues that control the validity of an insured's UIM claim against his insurer. *See, e.g.*, *In re State Farm Mut. Auto. Ins. Co.*, No. 01-19-00821-CV, 2020 WL 1264184, at *2 (Tex. App.—Houston [1st Dist.] Mar. 17, 2020, orig. proceeding); *Allstate Fire & Cas. Ins. Co. v. Inclan*, No. 13-19-00026-CV, 2020 WL 373061, at *2–3 (Tex. App.—Corpus Christi–Edinburg Jan. 23, 2020, pet. filed) (mem. op.); *Allstate Ins. Co. v. Jordan*, 503 S.W.3d 450, 455–56 (Tex. App.—Texarkana 2016, no pet.); *Ochoa v. Allstate Fire & Cas. Ins. Co.*, No. SA-20-CV-319-XR, 2020 WL 2129252, at *2 (W.D. Tex. May 5, 2020); *Vasquez v. Liberty Mut. Fire Ins. Co.*, No. 7:18-CV-44, 2018 WL 8805014, at *2–3 (S.D. Tex. Sept. 9, 2018); *Woods v. Argonaut Midwest Ins. Co.*, No. 6:15-CV-139, 2016 WL 3653518, at *5 (E.D. Tex. Mar. 18, 2016); *Borg v. Metro. Lloyd's of Tex.*, No. W:12-CV-256, 2013 WL 12091651, at *2 (W.D. Tex. Feb. 21, 2013).

### III

Allstate contends that Irwin is not entitled to an award of attorney's fees in this case

because it did not breach its contractual duty to pay UIM benefits. Allstate notes that "[n]either requesting UIM benefits nor filing suit against the insurer triggers a contractual duty to pay." *Brainard*, 216 S.W.3d at 818. Thus, Irwin did not establish his legal entitlement to policy benefits and trigger Allstate's duty to pay before proving the existence of liability and damages attributable to the underinsured motorist in the direct action. Because it promptly paid Irwin's UIM benefits after the jury verdict, Allstate maintains that it has satisfied its legal obligations and left no declaration for the court to pronounce. Allstate concludes that the UDJA therefore does not apply and that Irwin has improperly invoked it simply to collect his attorney's fees.

Irwin responds that, after Allstate failed to make a reasonable adjustment of his UIM claim, his only recourse was to sue and bind Allstate to a judgment that established the underlying conditions precedent to his UIM coverage. *See id.* (recognizing the unique character of the UIM contract, which conditions benefits on the "insured's legal entitlement to receive damages from a third party"). But Irwin could not sue Allstate directly for the underlying tort; it was not the tortfeasor. Further, he could not sue Allstate for breach of contract because no breach had occurred. Irwin submits that declaratory relief was the only remedy available to him. He concludes that his action on the contract was appropriately brought under the UDJA to determine the existence of conditions precedent to coverage in connection with the underlying tort and to declare his rights and status under the policy.

The court of appeals agreed. *See* 606 S.W.3d at 778 (concluding "that an insured can use the UDJA to establish the prerequisites to recovery in a UM/UIM case"). The court further rejected Allstate's contention that our decision in *Brainard* foreclosed the award of attorney's

6

fees under the UDJA.  *Id*. at 780.

Allstate complains, however, that the award of attorney's fees in connection with Irwin's UIM claim is not only contrary to *Brainard*, but also to our decision in *MBM Financial Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660 (Tex. 2009).  There, we said that a party could not simply tack a declaratory judgment action onto a matured breach-of-contract claim and recover attorney's fees under Chapter 37, when such fees were otherwise "not permitted under the specific common-law or statutory claims involved" in the suit.  *Id*. at 670.  Allstate argues that because Irwin cannot recover his Chapter 38 attorney's fees for breach of contract under *Brainard*, he likewise should not be able to recover his Chapter 37 attorney's fees per our ruling in *MBM Financial*.  The rule Allstate invokes, however, does not match the circumstances here because Irwin seeks a declaration of rights under the UIM contract prior to the existence of any breach or claim for attorney's fees under Chapter 38.

The UDJA provides that "[a] contract may be construed either before or after there has been a breach."  TEX. CIV. PRAC. & REM. CODE § 37.004(b).  In *MBM Financial*, we recognized this provision as authorizing the joinder of claims for breach of contract and declaratory relief in the same suit.  292 S.W.3d at 669 ("[P]rohibiting declaratory judgments whenever a breach of contract claim is available would negate the Act's explicit terms covering such claims.").  But we hastened to add that a party could not use the Act as a means to obtain attorney's fees it would not otherwise be entitled to recover.  *Id*. at 670 ("But when a claim for declaratory relief is merely tacked onto a standard suit based on a matured breach of contract, allowing fees under Chapter 37 would frustrate the limits Chapter 38 imposes on such fee recoveries.").  Thus, when

a party has a claim for which fees are unavailable, in addition to a claim for declaratory relief, the declaratory relief claim must do "more than merely duplicate the issues" being litigated by the claims for which fees are unavailable. *Id.* If it does not, fees are also unavailable under Chapter 37. *See Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 624–25 (Tex. 2011) (per curiam) (holding fees unrecoverable under the UDJA when the declarations "add nothing to what would be implicit or express in a final judgment for the other remedies sought in the same action").

But here Irwin does not have a claim for breach of contract, so his request for declaratory relief does not merely duplicate that claim. Irwin has not merely tacked this request "onto a standard suit based on a matured breach of contract." *MBM Fin.,* 292 S.W.3d at 670. The circumstances here are different from those in *MBM Financial* because, according to *Brainard*, no breach-of-contract claim had matured on which to join a request for declaratory relief. Instead, what Irwin sought to establish through his request for declaratory relief were the prerequisites for, and existence of, a UIM claim under the policy. Irwin's declaratory judgment action therefore does not "merely duplicate[] issues already before the trial court." *Id.* at 671.

The Uniform Declaratory Judgments Act empowers Texas courts "to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Tex. Civ. Prac. & Rem. Code § 37.003(a). The Act's stated "purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered." *Id.* § 37.002(b). Under its terms, any "person interested" under a written contract "may have determined any question of construction or validity" arising

8

under that contract and "obtain a declaration of rights, status, or other legal relations thereunder." *Id*. § 37.004(a).

As we observed in *MBM Financial*, "declarations of non-liability under a contract have been among the most common suits filed under the Act." 292 S.W.3d at 668. But declarations under the Act can be both negative (non-liability) and affirmative (liability). *See* TEX. CIV. PRAC. & REM. CODE § 37.003(b) (stating that "[t]he declaration may be either affirmative or negative in form and effect"). Moreover, "the declaration has the force and effect of a final judgment or decree." *Id*. Either party to a written contract may seek declaratory relief if there is a question regarding rights, status, or other legal relations arising under it. *Transp. Ins. Co. v. WH Cleaners, Inc.*, 372 S.W.3d 223, 231 (Tex. App.—Dallas 2012, no pet.). "The inquiry is 'essentially the same' whether it is presented by the insured or the carrier." *Id*. (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 244 (1937) (stating it is "the nature of the controversy, not the method of its presentation or the particular party who presents it, that is determinative")). A declaratory judgment is therefore appropriate when a real controversy exists between the parties, and the entire controversy may be determined by judicial declaration. *Bd. of Water Eng'rs v. City of San Antonio*, 283 S.W.2d 722, 724–25 (Tex. 1955).

The UDJA is intended to provide an effective remedy for settling disputes before substantial damages accrue. *See Etan Indus.*, 359 S.W.3d at 624 (noting that "it is intended as a means of determining the parties' rights when a controversy has arisen but before a wrong has been committed"). It is often preventative in nature. *See Cobb v. Harrington*, 190 S.W.2d 709, 713 (Tex. 1945) (describing the Act as an instrumentality wielded "in the interest of preventative

justice" and intended as a remedy "when a real controversy has arisen and even before the wrong has actually been committed"). Its purpose is remedial, not coercive. TEX. CIV. PRAC. & REM. CODE § 37.002(b). As a remedy, it has been described as "equitable in its nature" and as filling the gap between law and equity. *See Cobb*, 190 S.W.2d at 367 (collecting cases). We have described it as "neither legal nor equitable, but sui generis." *Id.* And, we have said that "[a] trial court has discretion to enter a declaratory judgment so long as it will serve a useful purpose or will terminate the controversy between the parties." *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 468 (Tex. 1995). The Act's application here to determine the prerequisites for, and existence of, the insured's UIM claim not only served a useful purpose but also terminated the controversy between the parties. The UDJA was thus properly invoked to determine the parties' status and responsibilities under the UM/UIM policy prior to its breach. TEX. CIV. PRAC. & REM. CODE § 37.003.

The dissent argues that a declaratory judgment action here is unnecessary because a "perfectly suitable" breach-of-contract claim exists to determine the UIM coverage issues. *Post* at ___. We, of course, agree that this litigation is about the insurance contract. But it is not about a breach because "the UIM insurer is under no contractual duty to pay benefits until the insured obtains a judgment establishing the liability and underinsured status of the other motorist." *Brainard*, 216 S.W.3d at 818. A judgment establishing liability and the underinsured status of the other motorist are thus conditions precedent to UIM coverage under *Brainard.* Moreover, they are issues about coverage, rather than breach, because the UIM insured does "not present a [breach of] contract claim before the trial court render[s] its judgment [establishing

10

these conditions]." *See id*. at 819 (holding that "Brainard did not present a contract claim before the trial court rendered its judgment").

"A condition precedent may be either a condition to the formation of a contract or to an obligation to perform an existing agreement." *Dillon v. Lintz*, 582 S.W.2d 394, 395 (Tex. 1979) (quoting 5 S. WILLISTON, A TREATISE ON THE LAW OF CONTRACTS, § 666 (3d ed. 1961)). "Conditions precedent to an obligation to perform are those acts or events, which occur subsequently to the making of a contract, that must occur before there is a right to immediate performance and before there is a breach of contractual duty." *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976). At issue here then is a contract dispute about coverage, which can only be resolved by a judgment that determines the existence of these conditions. Such coverage disputes are often resolved by a declaration of rights that may then avoid a future breach. *See Etan Indus.*, 359 S.W.3d at 624. A declaratory judgment in this instance is simply the remedy for resolving this contractual dispute.

**IV**

Finally, Allstate points out that our intermediate appellate courts have reached inconsistent decisions about whether attorney's fees may be recovered under the UDJA under these circumstances. The Texarkana Court of Appeals has concluded that, even though "a declaratory judgment is an appropriate method of establishing the prerequisites to recovery in a UIM benefits case," it is an abuse of discretion to award fees under the Act. *Allstate Ins. Co. v. Jordan*, 503 S.W.3d 450, 456 (Tex. App.—Texarkana 2016, no pet.). The courts of appeals in San Antonio and Corpus Christi–Edinburg disagree, concluding that attorney's fees are available

11

under the Act. *See* 606 S.W.3d at 780; *Inclan*, 2020 WL 373061, at *3.

The Act provides that "the court may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE § 37.009. Such awards are committed to the trial court's sound discretion and reviewed for abuse. *Oake v. Collin County*, 692 S.W.2d 454, 455 (Tex. 1985). The Texarkana court reasons that because "the insurer has the right to make the plaintiff meet the liability and damages prerequisites to UIM recovery, through litigation or otherwise," requiring the insurer to pay its insured's attorney's fees when exercising that right "would be inequitable and unjust under the UDJA." *Jordan*, 502 S.W.3d at 457. Moreover, the court suggests that an award of attorney's fees at this stage of the litigation is premature because such fees may be awarded later under Chapter 38, if a breach occurs. *Id*.

The court of appeals in this case agreed with *Jordan* to the extent it recognized "that a declaratory judgment action is an appropriate vehicle to establish the elements of a UIM claim." 606 S.W.3d at 780. But it did not agree that an award of reasonable and just attorney's fees under Chapter 37 was precluded either by Chapter 38, "which requires a matured breach of contract claim," or by our decision in *Brainard*. *Id*. Again, we agree.

As we have explained, the request for declaratory relief here is not a disguised breach-of-contract claim or some preliminary phase of such a claim. Rather it is a remedy unto itself, "preventative in nature," that the Legislature has provided for the determination of "rights when a controversy has arisen but before a wrong has been committed." *Etan Indus*., 359 S.W.3d at 624 (citing *Cobb*, 190 S.W.2d at 713). As part of that remedy, the Legislature has provided for

12

the award of "reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE § 37.009. Thus, when the Act applies, attorney's fees may be available. Unlike Chapter 38, Chapter 37's UDJA does not require an award of attorney's fees to anyone; rather, it "entrusts attorney fee awards to the trial court's sound discretion." *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). Because the UM/UIM contract provides for a unique first-party insurance claim, the insurance carrier's failure to pay is not an actionable breach of contract until the carrier is bound by an appropriate judgment. *See Brainard*, 216 S.W.3d at 818. But even though no breach has occurred, a justiciable controversy may arise as to the parties rights and status under the contract. When such a controversy exists, and a declaration of the parties' rights will terminate the controversy between the parties or otherwise serve a useful purpose, the remedy is available to the court. *See Bonham State Bank*, 907 S.W.2d at 468. Chapter 37's stated purpose is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." TEX. CIV. PRAC. & REM. CODE § 37.002(b). Part of the remedy it affords is a discretionary award of reasonable attorney's fees when equitable and just. *Id*. § 37.009.

Allstate contends that the trial court erred in awarding attorney's fees to the insured because Allstate did not breach the UIM contract, and Chapter 38 therefore does not apply. *See, e.g.*, *Grapevine Excavation, Inc. v. Md. Lloyds*, 35 S.W.3d 1, 5 (Tex. 2000) (noting Chapter 38's application "in a successful breach-of-contract action against an insurer unless attorney's fees are otherwise available"). While we agree that Irwin's suit is not for breach of contract and that Chapter 38 does not apply, we do not agree that the award here is erroneous or otherwise violates

the American Rule.  *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310–11 (Tex. 2006) (discussing "the American Rule").  Texas courts have long required parties to bear their own attorney's fees under the American Rule by "prohibiting fee awards unless specifically provided by contract or statute."  *MBM Fin.*, 292 S.W.3d at 669.  Because Chapter 37 provides for the award of attorney's fees, and the UDJA has not been invoked simply to replicate issues already before the court that might implicate Chapter 38, the award here is not erroneous; nor does Allstate claim it to be an abuse of discretion.

* * *

The court of appeals did not err in affirming the trial court's judgment.  Its judgment is accordingly affirmed.

_____
John P. Devine
Justice

Opinion Delivered: May 21, 2021