Lilith BRAINARD, et al., Petitioners,

v.

TRINITY UNIVERSAL INSURANCE
COMPANY, Respondent.

No. 04–0537.

Supreme Court of Texas.

Argued April 14, 2005.

Decided Dec. 22, 2006.

Rehearing Denied April 13, 2007.

Bryan W. Scott, Katy, for Petitioner.

Gregory R. Ave, Walters, Balido & Crain, L.L.P., Dallas, for Respondent.

Chief Justice JEFFERSON delivered the opinion of the Court.

This case presents the following issues: (1) whether uninsured/underinsured motorist (UIM) insurance covers prejudgment interest that the underinsured motorist would owe the insured in tort liability; (2) if so, how to apply settlement and personal injury protection (PIP) credits to the interest calculation; and (3) the circumstances under which an insured may recover attorney's fees from the UIM insurer under Chapter 38 of the Civil Practice and Remedies Code. We hold that: (1) UIM insurance covers this prejudgment interest; (2) under the "declining principal" formula, each credit is applied according to the date on which it was received; and (3) the insured may recover attorney's fees under Chapter 38 only if the insurer does not tender UIM benefits within thirty days after the trial court signs a judgment establishing the liability and underinsured status of the other motorist. We reverse the court of appeals' judgment in part, affirm in part, and remand this case to the trial court to calculate pre-judgment interest consistent with this opinion.

## I

### Background

On July 1, 1999, Edward H. Brainard II was killed when his vehicle was involved in a head-on collision with a rig owned by Premier Well Service, Inc. His widow, Lilith Brainard, and their five children (collectively, Brainard) brought a wrongful death action against Premier and sought UIM benefits from Trinity Universal Insurance Company under a policy issued to the family business, Brainard Cattle Company. Trinity paid Brainard $5,000 under the policy's PIP provision but requested further information supporting the UIM claim. Brainard alleges she submitted the information and performed all conditions precedent to receiving the benefits, but Trinity never paid. Eventually, Brainard joined Trinity as a defendant, alleging breach of contract, breach of the common law duty of good faith, violations of the Deceptive Trade Practices–Consumer Protection Act, and violations of Insurance Code articles 21.21 and 21.55.

On December 7, 2000, Brainard and Premier settled Brainard's claims for $1,000,000, Premier's policy limit, and Premier was subsequently dismissed from the suit. When Brainard demanded that Trinity also tender the $1,000,000 UIM policy limit, Trinity countered with an offer of $50,000. The trial court severed Brainard's extra-contractual claims, which remain pending, and the parties proceeded to trial on the UIM contract. A jury found that Premier's negligence caused the accident and awarded Brainard $1,010,000 for pecuniary loss, funeral expenses, loss of companionship and society, and mental anguish. The jury also awarded $100,000 for attorney's fees.

The trial court applied a $1,005,000 credit for Brainard's settlement and PIP benefits, and signed a judgment against Trinity for the remaining $5,000 in damages plus $100,000 in attorney's fees. On appeal, Trinity challenged the attorney's fees award, and Brainard, by cross appeal, alleged the trial court erred in refusing to award prejudgment interest on the $1,010,000 in actual damages. The court of appeals reversed that portion of the trial court's judgment awarding attorney's fees and affirmed the denial of prejudgment interest. 153 S.W.3d 508, 513. Because both points have engendered disagreement among the courts of appeals, we granted Brainard's petition for review. 48 Tex. Sup.Ct. J. 439 (Mar. 11, 2005).

## II

### Recovery of Prejudgment Interest

■ The Insurance Code requires insurers to offer Texas motorists UIM coverage and mandates that such coverage:

provide for payment to the insured of all sums which he shall be legally entitled to recover as damages from owners or operators of underinsured motor vehicles because of bodily injury or property damage in an amount up to the limit specified in the policy, reduced by the amount recovered or recoverable from the insurer of the underinsured motor vehicle.

TEX. INS.CODE art. 5.06–1(5). A motorist is underinsured if his or her liability insurance is insufficient to pay for the injured party's actual damages. *Stracener v. United Servs. Auto. Ass'n,* 777 S.W.2d 378, 380 (Tex.1989). Because the jury valued Brainard's damages at $1,010,000, and Premier's liability policy limit was $1,000,000, Premier was underinsured. The trial court correctly applied the sum of Premier's $1,000,000 liability limit and Brainard's $5,000 PIP recovery as an off-

set to actual damages. *Mid–Century Ins. Co. of Tex. v. Kidd,* 997 S.W.2d 265, 271 (Tex.1999); *Stracener,* 777 S.W.2d at 380. Thus, Trinity does not dispute that the $5,000 difference is covered under Brainard's UIM policy. The issue is whether, in addition to this amount, UIM insurance covers prejudgment interest that Premier would owe on the $1,010,000 in actual damages. We conclude that it does.

■ Prejudgment interest is awarded to fully compensate the injured party, not to punish the defendant. *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549, 552 (Tex.1985), *superseded in part by statute,* Act of June 3, 1987, 70th Leg., 1st C. S., ch. 3, § 1, 1987 Tex. Gen. Laws 51, 51–52, *as recognized in Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507 (Tex.1998) *and C & H Nationwide, Inc. v. Thompson,* 903 S.W.2d 315, 327 (Tex.1994). It is " 'compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment.' " *Johnson & Higgins,* 962 S.W.2d at 528 (quoting *Cavnar,* 696 S.W.2d at 552). By statute, "[a] judgment in a wrongful death, personal injury, or property damage case earns prejudgment interest." TEX. FIN.CODE § 304.102. Thus, if Brainard obtained a judgment against Premier for past damages resulting from the collision, Premier would be liable for prejudgment interest. Whether Brainard may recover this interest from Trinity is governed by their UIM insurance contract.

In language closely tracking article 5.06–1(5), Brainard's policy states that Trinity will pay "damages which [Brainard] is legally entitled to recover from" Premier. We have consistently viewed prejudgment interest as falling within the common law meaning of damages, and Trinity does not argue that the Legislature

or the parties intended the term to convey a narrower meaning. TEX. INS.CODE art. 5.06–1(5); *see, e.g., Horizon/CMS Healthcare Corp. v. Auld,* 34 S.W.3d 887, 898 (Tex.2000) (citing *Cavnar,* 696 S.W.2d at 552–54). Two courts of appeals have held that prejudgment interest constitutes damages that the insured is "legally entitled to recover" from the underinsured motorist. *Norris v. State Farm Mut. Auto. Ins. Co.,* 217 S.W.3d 1, 7 (Tex.App.-Waco 2004, pet. granted); *Menix v. Allstate Indem. Co.,* 83 S.W.3d 877, 880 (Tex.App.-Eastland 2002, pet. denied); *Allstate Indem. Co. v. Collier,* 983 S.W.2d 342, 343 (Tex.App.-Waco 1998, pet. dism'd by agr.).

Trinity's primary argument to the contrary, upon which the court of appeals relied, emphasizes that the UIM policy, like article 5.06–1(5), requires Trinity to pay only those damages which the insured is legally entitled to recover "because of bodily injury or property damage." 153 S.W.3d at 512; *see also* TEX. INS.CODE art. 5.06–1(5). Trinity contends that this qualification negates coverage for prejudgment interest because the essence of prejudgment interest is compensation for lost use of money, not damages from bodily injury. Further, Trinity suggests that *Brainard's* interpretation of the UIM endorsement would require the insurer to cover all damages assessed against the underinsured motorist, yet the courts of appeals have held that UIM insurance does not cover punitive damages. *See, e.g., Milligan v. State Farm Mut. Auto. Ins. Co.,* 940 S.W.2d 228, 232 (Tex.App.-Houston [14th Dist.] 1997, writ denied); *State Farm Mut. Auto. Ins. Co. v. Shaffer,* 888 S.W.2d 146, 148 (Tex.App.-Houston [1st Dist.] 1994, writ denied); *Vanderlinden v. United Servs. Auto. Ass'n Prop. & Cas. Ins. Co.,* 885 S.W.2d 239, 242 (Tex.App.-Texarkana 1994, writ denied).

Trinity's argument fails for several reasons. First, although several courts of appeals have held that UIM insurance does not cover punitive damages assessed against the underinsured motorist, none reached this result by adopting Trinity's narrow interpretation of damages "because of bodily injury." In fact, their reasoning effectively supports UIM coverage for prejudgment interest. In *Shaffer,* the court concluded that the phrase "because of bodily injury" was ambiguous because it could mean that the damages must (a) literally derive from a bodily injury or (b) arise as a result of bodily injury. *Shaffer,* 888 S.W.2d at 148–49. If this language were ambiguous and had been drafted by the insurance company, precedent would require that it be interpreted to favor the insured. *Nat'l Union Fire Ins. Co. v. Hudson Energy Co.,* 811 S.W.2d 552, 555 (Tex.1991). Most UIM provisions, however, recite nearly the exact text of article 5.06–1(5). For that reason, the *Shaffer* court inquired into the statute's legislative intent, which it found addressed in one of this Court's opinions. In *Stracener,* we concluded that the Legislature sought to protect "conscientious motorists from 'financial loss caused by negligent financially irresponsible motorists.'" *Stracener,* 777 S.W.2d at 382 (quoting Act of Oct. 1, 1967, 60th Leg., R. S., ch. 202, § 3, 1967 Tex. Gen. Laws 448, 449). Accordingly, the court of appeals observed that a primary purpose of UIM insurance is compensatory; it protects against financial loss. *Shaffer,* 888 S.W.2d at 149. Other courts of appeals have added that neither deterring wrongful conduct nor punishing the defendant is accomplished when the UIM insurer pays punitive damages assessed against the underinsured motorist. *Milligan,* 940 S.W.2d at 231; *Vanderlinden,* 885 S.W.2d at 240–42. Thus, they have held that neither the language of article 5.06–

1(5) nor public policy supports coverage of punitive damages.

We have already noted that prejudgment interest serves to compensate the injured party, not to punish the defendant. *Johnson & Higgins*, 962 S.W.2d at 528; *Cavnar*, 696 S.W.2d at 552. This distinction is apparent in the rule that "[p]rejudgment interest may not be assessed or recovered on an award of exemplary damages." TEX. CIV. PRAC. & REM.CODE § 41.007. Article 5.06–1(5)'s compensatory purpose is well served when the insured obtains, in addition to actual damages, any prejudgment interest that the underinsured motorist would owe the insured. Trinity's attempt to give the phrase "because of bodily injury" an artificially literal meaning—so as to establish a nexus requirement that eliminates coverage for prejudgment interest—has no basis in the statute's history or our precedent, under which article 5.06–1 is liberally construed to protect persons who are legally entitled to recover damages from underinsured motorists. *Stracener*, 777 S.W.2d at 382.

Moreover, Trinity's rigid reading proves too much, for it would entail splitting hairs even among purely compensatory damages, such as those for mental anguish and loss of society. Article 5.06–1(5) states that the insurer will pay the insured "all sums which he shall be legally entitled to recover as damages from owners or operators of underinsured motor vehicles because of bodily injury or property damage." TEX. INS.CODE. art. 5.06–1(5). The qualification "because of bodily injury or property damage" merely underscores that UIM insurance is compensatory. In addition, it clarifies what should be obvious—that only injuries and damages caused by the motor vehicle accident are covered—because if the qualification is omitted, the policy would not exclude damages arising from unrelated incidents and transactions

between the parties. In sum, while it is true that prejudgment interest accrues over time because of lost use of money, it is equally accurate to say that it constitutes additional compensatory damages for the insured's bodily injury and property damage.

Trinity's alternative argument against coverage for prejudgment interest is based on the contractual aspect of a UIM claim. *Franco v. Allstate Ins. Co.*, 505 S.W.2d 789, 791–92 (Tex.1974) (noting that, "although ultimate recovery in this type of action depends upon proof of damages due to the tort of an uninsured third party, the cause of action against the insurer arises by reason of the written contract"). If the claim is purely contractual, as Trinity contends, then Finance Code section 304.102, which authorizes prejudgment interest in wrongful death, personal injury, and property damage cases, would have no application in this case. TEX. FIN.CODE § 304.102. The court of appeals adopted this approach, citing our decision in *Henson v. Southern Farm Bureau Casualty Insurance Company*, 17 S.W.3d 652, 653 (Tex. 2000), as additional support for the view that "the relationship between the Brainards and Trinity is that of contracting parties." 153 S.W.3d at 513.

The reference to *Henson* deserves further discussion because our reasoning in that case clarifies the issues presented here. Henson was a passenger in a truck driven by Millican, which collided with a vehicle driven by Contreras. *Henson*, 17 S.W.3d at 652. Henson sued Millican and Contreras for negligence and, before establishing liability, settled with Contreras for $20,000—her liability insurance limit. *Id.* at 652–53. A jury attributed one hundred percent of the negligence to Contreras and assessed Henson's damages at $133,842. *Id.* at 653. Within thirty days of the judgment, Henson and Millican's

UIM insurers tendered $45,000—their combined UIM policy limits. *Id.* Henson, however, refused the payment and demanded prejudgment interest on top of the policy limits, alleging the interest began to accrue against the insurers from the earlier of 180 days after he gave notice of his claim or the day he filed suit against them. *Id.* at 653–54.

The issue in *Henson* was whether prejudgment interest accrued on the insured's contractual claim for UIM benefits. The prejudgment interest which Henson could recover from Contreras in tort liability was not at issue, as the damages assessed by the jury already exceeded the UIM policy limit. We examined the insurer's obligation to pay damages which the insured is "legally entitled to recover" from the underinsured motorist and concluded that there is no contractual duty to pay benefits until the liability of the other motorist and the amount of damages suffered by the insured are determined. *Id.* at 653–64. Thus, we held that a UIM claim does not earn prejudgment interest until the insurer breaches the contract by withholding benefits after the insured has obtained a judgment establishing the liability and underinsured status of the other motorist. *Id.* at 654. The jury could have found that Contreras was not negligent or that Henson's damages did not exceed Contreras's liability insurance limit, precluding any recovery of UIM benefits. *Id.* Because the insurers tendered the benefits promptly after the jury made its findings, no contractual duty was breached, and Henson was not entitled to receive the benefits earlier than he did. *Id.* The question we answer today—whether UIM insurance covers the prejudgment interest an underinsured motorist *would owe the insured*— was not before us in *Henson.*

Under section 304.102, Premier would be liable for prejudgment interest on $1,010,000. Tex. Fin.Code § 304.102. The fact that Brainard's suit against Trinity is based on contract in no way renders the statute inapplicable. On the contrary, the UIM policy effectively incorporates the statute by requiring Trinity to pay damages which Brainard is "legally entitled to recover" from Premier. Section 304.102, like the law of negligence, is necessary to determine the liability of the underinsured motorist. The UIM policy, however, controls Trinity's obligations. Because Brainard obtained a judgment establishing the negligence and underinsured status of Premier, the contract requires Trinity to pay benefits. *Henson,* 17 S.W.3d at 654.

Accordingly, we hold that UIM insurance covers prejudgment interest that the underinsured motorist would owe the insured. The court of appeals erred in affirming the trial court's judgment denying Brainard this recovery.

### III

### Calculation of Prejudgment Interest

The parties do not challenge the calculation of actual damages; they agree that the trial court properly deducted Brainard's $1,000,000 settlement and $5,000 PIP recovery from the jury's $1,010,000 verdict, resulting in Trinity's liability for $5,000. *Mid–Century Ins. Co.,* 997 S.W.2d at 271; *Stracener,* 777 S.W.2d at 380. Instead, the issue concerns how to apply these credits when calculating prejudgment interest. Based on the jury's verdict, Premier would have been liable for $1,010,000 in actual damages, plus prejudgment interest on this amount. Having concluded that UIM insurance covers this interest, we turn now to its calculation.

Brainard's suit against Premier was for wrongful death. In a wrongful death case, prejudgment interest accrues beginning on the 180th day after the defendant receives

written notice of the claim or the day suit is filed, whichever occurs first, and ending on the day preceding the date judgment is rendered. TEX. FIN.CODE § 304.104. In this case, the prejudgment interest period commenced on January 19, 2000, when Brainard filed suit against Premier. Because the trial court signed its judgment on January 15, 2003, the period ended on January 14. *Id.* Prejudgment interest is computed as simple interest with a rate equal to the postjudgment interest rate applicable at the time judgment is rendered. *Id.* §§ 304.103, 304.104. The trial court's judgment set the rate at ten percent.

Brainard contends that prejudgment interest is calculated on the entire $1,010,000 before applying credits. Accordingly, she seeks $263,430 in prejudgment interest— ten percent interest on $1,010,000 from January 19, 2000, until August 29, 2002, the date the parties moved to enter judgment.[1] In Brainard's view, the interest is added to the jury's verdict before deducting settlement and PIP credits, so that the credits do not affect the prejudgment interest calculation. Trinity objects, arguing that Brainard should not continue to earn interest on $1,010,000 in damages despite having already received $1,005,000 in compensation. We agree.

■ We recently touched on this issue in *Battaglia v. Alexander*, 177 S.W.3d 893, 908–09 (Tex.2005), in which we held that the trial court erred in calculating prejudgment interest on total damages before deducting payments that the plaintiff received from settling defendants. Although *Battaglia* involved health care liability claims subject to section 16.02 of former Revised Civil Statutes article 4590i, we established a framework that resolves the issue presented here. We reiterated that

prejudgment interest is compensation " 'for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment.' " *Id.* at 907 (quoting *Cavnar*, 696 S.W.2d at 552). Therefore, compensation other than for lost use of money is not interest but a windfall for the claimant and a penalty to the defendant. *Id.* We concluded that, to satisfy the purpose of prejudgment interest, settlements must be credited periodically, according to the date they are received. *Id.* at 907–08. This approach, known as the "declining principal" formula, is the proper way to apply credits in the calculation of prejudgment interest. *Id.* at 909 (overruling in part *C & H Nationwide, Inc. v. Thompson*, 903 S.W.2d 315, 327 (Tex.1994)).

■ In *Battaglia*, we concluded that "[a] settlement payment should be credited first to accrued prejudgment interest as of the date the settlement payment was made, then to 'principal,' thereby reducing or perhaps eliminating prejudgment interest from that point in time forward." *Id.* at 908. Thus, as we explain below, each credit applies first to the accrued interest and then to the principal, with each credit establishing a new interval. At each new interval, interest continues to accrue only on the remaining principal because under the general prejudgment interest provisions, "interest is computed as simple interest and does not compound." TEX. FIN. CODE § 304.104.

■ Under the "declining principal" formula, the trial court is to consider the date on which the insured received each payment. Trinity paid Brainard $5,000 in PIP benefits shortly after the July 1, 1999 collision. Because there is no dispute that

---

1. As explained above, however, the relevant date is that of the trial court's judgment, rather than when the parties moved for entry of judgment.

this payment was made sometime in July, well before the prejudgment interest period commenced, we may assume it was July 31. Brainard settled with Premier for $1,000,000—its liability insurance limit—on December 7, 2000. On March 9, 2001, Trinity offered to settle with Brainard for $50,000. *See* TEX. FIN. CODE § 304.106. Two weeks later, in a letter to Brainard's counsel, Trinity confirmed that the offer would remain open. Because Brainard's $5,000 recovery did not exceed Trinity's settlement offer, prejudgment interest did not accrue on the judgment after March 9, 2001. *Id.* § 304.105(a) ("If judgment for a claimant is equal to or less than the amount of a settlement offer of the defendant, prejudgment interest does not accrue on the amount of the judgment during the period that the offer may be accepted."). Following are the relevant dates:

A. 07/31/1999 Brainard receives $5,000 PIP payment
B. 01/19/2000 Prejudgment interest period begins when Brainard files suit
C. 12/07/2000 Brainard receives $1,000,000 settlement
D. 03/09/2001 Trinity offers Brainard $50,000

Brainard is entitled to recover prejudgment interest on the damages caused by Premier's negligence. The beginning principal is $1,010,000—the amount of damages determined by the jury. The $5,000 PIP credit reduced the principal before prejudgment interest began to accrue. Thus, during the period from B to C, interest accrued on $1,005,000. At point C, the $1,000,000 credit is applied first to accrued prejudgment interest and then to principal. During the period from C to D, interest accrued on the principal remaining after application of the $1,000,000 credit. At point D, Brainard could have accepted Trinity's settlement offer, and interest ceased to accrue on that date. Trinity is liable for the remaining sum, up to Brainard's UIM policy limit, of the uncredited principal plus the uncredited interest that accrued from point C to point D. TEX. INS.CODE art. 5.06–1(5).

We remand this case to the trial court to modify the judgment in accordance with this opinion.

## IV

### Attorney's Fees

The final issue is whether Brainard may recover attorney's fees on her contract claim. The court of appeals reversed that portion of the trial court's judgment awarding Brainard $100,000 in attorney's fees. 153 S.W.3d at 510–11.

 Attorney's fees are recoverable from an opposing party only as authorized by statute or by contract between the parties. *Travelers Indem. Co. v. Mayfield,* 923 S.W.2d 590, 593 (Tex.1996). Chapter 38 of the Civil Practice & Remedies Code permits an insured to recover attorney's fees incurred in a successful breach of contract suit against the insurer unless the insurer is liable for the fees under a different statutory scheme. TEX. CIV. PRAC. & REM.CODE §§ 38.001(8), 38.006; *Grapevine Excavation, Inc. v. Maryland Lloyds,* 35 S.W.3d 1, 5 (Tex.2000). Because no other statutory scheme applies, Brainard seeks to recover the fees under Chapter 38.

 Under section 38.002, Brainard must show that: (1) she was represented by counsel; (2) she presented the claim to Trinity; and (3) Trinity failed to pay the just amount owed within thirty days of presentment. TEX. CIV. PRAC. & REM.CODE § 38.002. Brainard contends that her suit is like any other breach of contract suit, and therefore, presentment occurred on February 15, 2000, the day she made a claim for UIM benefits. Three courts of appeals support her position. *See Norris v. State Farm,* 217 S.W.3d at 3; *State Farm Mut. Auto. Ins. Co. v. Nickerson,* 130 S.W.3d 487, 490 (Tex.App.-Texarkana 2004, pet. granted); *Allstate Ins. Co. v.*

*Lincoln,* 976 S.W.2d 873, 876 (Tex.App.-Waco 1998, no pet.); *Whitehead v. State Farm Mut. Auto. Ins. Co.,* 952 S.W.2d 79, 88–89 (Tex.App.-Texarkana 1997), *rev'd on other grounds,* 988 S.W.2d 744 (Tex.1998); *Novosad v. Mid–Century Ins. Co.,* 881 S.W.2d 546, 552 (Tex.App.-San Antonio 1994, no writ). Trinity, on the other hand, argues that a UIM policy is different because the insurer's duty to pay does not arise until the underinsured motorist's liability, and the insured's damages, are legally determined. Five courts of appeals, including the court of appeals in this case, agree. *See DeLaGarza v. State Farm Mut. Auto. Ins. Co.,* 175 S.W.3d 29, 34 (Tex.App.-Dallas 2005, pet. denied); *Menix v. Allstate Indem. Co.,* 83 S.W.3d 877, 882 (Tex.App.-Eastland 2002, pet. denied); *Sprague v. State Farm Mut. Auto. Ins. Co.,* 880 S.W.2d 415, 416 (Tex.App.-Houston [14th Dist.] 1993, writ denied); *Sikes v. Zuloaga,* 830 S.W.2d 752, 753 (Tex.App.-Austin 1992, no writ).

 This issue turns on the language in Chapter 38 requiring that "payment for the just amount owed must not have been tendered before the expiration of the 30th day after the claim is presented." TEX. CIV. PRAC. & REM. CODE § 38.002(3). The purpose of presentment is to allow the opposing party a reasonable opportunity to pay a claim without incurring an obligation for attorney's fees. *Jones v. Kelley,* 614 S.W.2d 95, 100 (Tex. 1981). Thus, an essential element to recovery of attorney's fees under Chapter 38 in a suit based on contract is "the existence of a duty or obligation which the opposing party has failed to meet." *Ellis v. Waldrop,* 656 S.W.2d 902, 905 (Tex.1983). The UIM insurer is obligated to pay damages which the insured is "legally entitled to recover" from the underinsured motorist. TEX. INS. CODE art. 5.06–1(5). As discussed above, we have determined that

this language means the UIM insurer is under no contractual duty to pay benefits until the insured obtains a judgment establishing the liability and underinsured status of the other motorist. *Henson,* 17 S.W.3d at 653–54. Neither requesting UIM benefits nor filing suit against the insurer triggers a contractual duty to pay. *Id.* Where there is no contractual duty to pay, there is no just amount owed. Thus, under Chapter 38, a claim for UIM benefits is not presented until the trial court signs a judgment establishing the negligence and underinsured status of the other motorist.

 Of course, the insured is not required to obtain a judgment against the tortfeasor. *State Farm Mut. Auto. Ins. Co. v. Matlock,* 462 S.W.2d 277, 278 (Tex. 1970). The insured may settle with the tortfeasor, as Brainard did in this case, and then litigate UIM coverage with the insurer. But neither a settlement nor an admission of liability from the tortfeasor establishes UIM coverage, because a jury could find that the other motorist was not at fault or award damages that do not exceed the tortfeasor's liability insurance. *See Henson,* 17 S.W.3d at 654. Brainard's contention that a UIM policy is to be treated like other contracts, for which damages are liquidated in a judicial proceeding and attorney's fees incurred are recoverable, misinterprets the nature of UIM insurance. The UIM contract is unique because, according to its terms, benefits are conditioned upon the insured's legal entitlement to receive damages from a third party. Unlike many first-party insurance contracts, in which the policy alone dictates coverage, UIM insurance utilizes tort law to determine coverage. Consequently, the insurer's contractual obligation to pay benefits does not arise until liability and damages are determined. *Id.*

Because the contract did not require Trinity to pay UIM benefits before Premier's negligence and underinsured status were determined, Brainard did not present a contract claim before the trial court rendered its judgment, and the court of appeals correctly concluded that Brainard is not entitled to recover attorney's fees under Chapter 38.

## V

### Conclusion

We reverse the portion of the court of appeals' judgment that denied Brainard prejudgment interest, affirm the portion that denied attorney's fees, and remand this case to the trial court to calculate prejudgment interest consistent with this opinion. TEX.R.APP. P. 60.2(a), (d).

Justice O'NEILL and Justice JOHNSON did not participate in the decision.