# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-20-00088-CV

**Barbara Burgess, Appellant**

**v.**

**Allstate Fire and Casualty Insurance Company, Appellee**

### FROM THE 368TH DISTRICT COURT OF WILLIAMSON COUNTY
### NO. 19-0925-C368, THE HONORABLE RICK J. KENNON, JUDGE PRESIDING

## O P I N I O N

Appellant Barbara Burgess sued her uninsured/underinsured motorist (UIM) insurer, Allstate Fire and Casualty Insurance Company, for common law bad faith and violations of the Insurance Code arising from Allstate's handling of her claim for UIM benefits. Allstate moved for summary judgment, asserting that it could not be liable on Burgess's extracontractual claims as a matter of law because it promptly paid UIM benefits after Burgess obtained a judgment establishing that Allstate was contractually obligated to pay. After the trial court granted Allstate's summary judgment and dismissed Burgess's claims, she appealed to this Court. Because Allstate's compliance with its contractual obligation to pay UIM benefits does not preclude Burgess from maintaining her extracontractual claims and because Burgess has sufficiently alleged an injury for which she could, if proven, recover damages, we reverse the trial court's grant of summary judgment and remand for further proceedings.

# BACKGROUND

An insurance policy is a contract that establishes the respective rights and obligations to which an insurer and its insured have mutually agreed. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 488 (Tex. 2018) (citing *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015)). To protect responsible motorists from financial loss caused by uninsured and underinsured drivers, Texas law requires automobile insurers to include UIM coverage in their policies unless their insured rejects that coverage in writing. Tex. Ins. Code § 1952.101. A UIM insurance contract provides policy benefits to the insured for amounts that he or she is *legally entitled to recover* as damages from owners and operators of uninsured or underinsured motor vehicles because of bodily injury or property damage. *See id.* § 1952.106.

"[A] UIM contract is unlike many first-party insurance contracts because, according to its terms, benefits are conditioned upon the insured's legal entitlement to receive damages from a third party." *In re American Nat'l Cnty. Mut. Ins. Co.*, 384 S.W.3d 429, 437 (Tex. App.—Austin 2012, orig. proceeding). Therefore, to establish an insurer's contractual obligation to pay UIM benefits, the insured must obtain legal determinations as to the third-party's liability and underinsured status.[1] *Brainard v. Trinity Universal Life Ins. Co.*, 216 S.W.3d 809, 818 (Tex. 2006).

In addition to an insurer's contractual obligations, the common law and the Texas Insurance Code impose extracontractual duties on insurers related to the handling and processing of insurance claims. Under the common law, an insurance company owes a duty of good faith

---

[1] For clarity, throughout this opinion, we will sometimes refer to a suit to establish a UIM insurer's contractual obligation to pay policy benefits, i.e., to obtain legal determinations as to the third-party's liability and underinsured status, as a "coverage suit" and to the resulting judgment as a "coverage judgment" or a "judgment establishing coverage."

and fair dealing to its insured in its handling and processing of a claim for benefits. *Arnold v. National Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987). Similarly, an insurer may be liable to its insured for unfair settlement practices under Chapter 541 of the Insurance Code. *See* Tex. Ins. Code § 541.060 (prohibiting insurers from engaging in unfair settlement practices). As relevant here, an insurer violates Chapter 541 by (1) misrepresenting a material fact or policy provision relating to coverage at issue; (2) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear; (3) refusing to pay a claim without conducting a reasonable investigation with respect to the claim; and (4) failing to promptly provide a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim. *See id.* § 541.060,(a)(1), (2)(A), (3), (7); *see also id.* §§ 541.151, .152 (private right of action for damages); Tex. Bus. & Com Code § 17.50 (providing that consumer may maintain DTPA action for act or practice violating of Chapter 541, Insurance Code).

In August 2014, Burgess was injured when her automobile was struck by another driver. Burgess later filed a coverage suit against Allstate, seeking a declaration as to her legal entitlement to her UIM policy benefits. *See Allstate Ins. Co. v. Irwin*, 627 S.W.3d 263, 265 (Tex. 2021) ("If not otherwise determined, however, a judgment establishing these prerequisites to [UIM] coverage may be obtained in a direct action against the insurance carrier."). While that suit was pending, Burgess settled her claim with the other driver for his $100,000 policy limit

3

and then, in September 2018, demanded that Allstate pay her UIM policy limit of $50,000. Allstate refused Burgess's demand without making a counteroffer.[2]

In March 2019, Burgess's coverage suit against Allstate proceeded to a jury trial. At the conclusion, the jury returned a verdict finding that the other driver was at fault for the accident and that Burgess was entitled to $386,008 in compensatory damages. Specifically, the jury awarded Burgess $75,000 for past physical pain and $311,009 for future medical-care expenses. On March 27, 2019, consistent with the jury's verdict, the trial court signed a final judgment declaring that Burgess was entitled to UIM benefits in the amount of $50,000. After the jury's verdict but before the trial court signed the judgment, Allstate paid Burgess her $50,000 UIM policy limit plus accrued interest.

In June 2019, Burgess filed the suit underlying this appeal. In her petition, Burgess asserts a variety of extracontractual claims stemming from Allstate's denial of her claim and withholding of UIM benefits until the trial court signed the judgment establishing coverage. Specifically, Burgess claims that Allstate breached the common-law duty of good faith and fair dealing and engaged in certain unfair settlement practices set forth in Chapter 541. In Burgess's view, if Allstate had properly handled her claim, in good faith and in compliance with Chapter 541, it would have settled her UIM claim for policy limits without the necessity of a trial.

Allstate filed a traditional motion for summary judgment, in which it asserted that it was not liable on Burgess's claims as a matter of law. Specifically, Allstate argued that because it timely paid the UIM benefits after Burgess obtained a coverage judgment, "there has been no breach of contract as a matter of law and, as a result, there are no facts to support

---

[2] Allstate's summary-judgment evidence shows that in August 2017, it offered Burgess $500 to settle her claim for UIM benefits. There is no dispute, however, that it refused Burgess's September 2018 demand.

liability for any extra-contractual claims." Allstate also argued that its liability did not become "reasonably clear" until the trial court signed the coverage judgment and that it "did not refuse to pay [Burgess's] policy benefits without conducting a reasonable investigation because the trial of Burgess's UIM claim at which it was legally determined who was at fault and the amount of damages was the investigation."

The trial court granted Allstate's motion for summary judgment and dismissed all of Burgess's claims with prejudice. This appeal followed.

## STANDARD OF REVIEW

To prevail on a traditional summary-judgment motion, the movant must demonstrate that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215-16 (Tex. 2003). When the movant satisfies this initial summary-judgment burden, the burden shifts to the nonmovant to produce evidence raising an issue of fact. *See* Tex. R. Civ. P. 166a(c). We review a trial court's ruling on a motion for summary judgment de novo. *Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 278 (Tex. 2018).

## DISCUSSION

The primary legal question presented by Allstate's motion for summary judgment, and now before this Court on appeal, is whether an insured can maintain extracontractual claims for common-law bad faith and for unfair settlement practices under Chapter 541 when those claims are based on an insurer's withholding of UIM benefits until the insured obtains a

5

judgment establishing coverage.[3] Allstate contends that the Texas Supreme Court's decision in *Brainard v. Trinity Universal Insurance Co.*, 216 S.W.3d at 816-18, is dispositive of this issue and establishes that such claims cannot, as a matter of law, be maintained.

In *Brainard*, the Texas Supreme Court considered whether the insured, who had successfully established his right to UIM benefits in a coverage suit, could recover attorney's fees against his insurer under Chapter 38 of the Texas Civil Practice and Remedies Code. *Id.* at 817; *see* Tex. Civ. Prac. & Rem. Code §§ 38.001-.002. The court's resolution of that issue turned on whether the insured, Brainard, had "presented" his claim for UIM benefits, as required

---

[3] In her first amended petition, Burgess claimed that Allstate violated prompt-payment provisions in Chapter 542 of the Insurance Code by (1) failing to notify her of its acceptance or rejection of her claim within fifteen days and (2) delaying payment of her claim for more than sixty days. *See* Tex. Ins. Code §§ 542.056 (notice of acceptance or rejection of claim), .058 (delay in payment of claim). In her appellate briefing, however, Burgess does not discuss her Chapter 542 claims, although she specifically asserts that she is entitled to maintain her extracontractual claims brought under Chapter 541 and the common-law duty of good faith and fair dealing. Moreover, Burgess concedes in her brief that unlike Chapter 541, the "Prompt Pay Act [Chapter 542] allows an insurer to withhold payment of benefits until legal entitlement has been established." *See State Farm Mut. Auto Ass'n v. Cook*, 591 S.W.3d 677, 684 (Tex. App.—San Antonio 2019, no pet.) ("When an insurer promptly pays a UM/UIM claim after the date the trial court enters such a judgment [establishing the liability and uninsured status of the other motorist], the insurer does not violate the [Insurance] Code's prompt payment provisions.") (citing *Mid-Century Ins. Co. v. Daniel*, 223 S.W.3d 586, 589-90 (Tex. App.—Amarillo 2007, pet. denied)); *Menix v. Allstate Indem. Co.*, 83 S.W.3d 877, 885 (Tex. App.—Eastland 2002, pet. denied).

Although an appellant may raise an issue that generally contends that the trial court erred in rendering summary judgment, the appellant must present argument and supporting authorities in support of that issue. *See* Tex. R. App. P. 38.1(i). We cannot conclude that Burgess's appellate briefing "fairly include[s]" a challenge to the trial court's dismissal of her Chapter 542 claims. *See id.* R. 38.1(f) (requiring courts to treat the statement of issue "as covering every subsidiary question that is fairly included"). Consequently, Burgess has waived any argument that the trial court erred in granting summary judgment as to claims brought under Chapter 542. *See Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 500 (Tex. 2015) ("Failure to provide citations or argument and analysis as to an appellate issue may waive it.").

6

by Chapter 38.[4] *Brainard*, 216 S.W.3d at 818. In concluding that Brainard had not presented his claim, the Supreme Court explained that a UIM insurer is contractually obligated to pay only those damages which the insured is "legally entitled to recover" and that, consequently, an insurer's contractual duty to pay UIM benefits does not arise "until the insured obtains a judgment establishing liability and underinsured status of the other motorist." *Id*. "Neither requesting UIM benefits nor filing suit against the insurer triggers a contractual duty to pay." *Id*. Thus, for purposes of recovering attorney's fees under Chapter 38, a claim for UIM benefits is "not presented until the trial court signs a judgment establishing the negligence and underinsured status of the other motorist." *Id*. Because his UIM insurer had timely paid benefits after the trial court signed the judgment establishing coverage, Brainard was not entitled to recover his attorney's fees under Chapter 38. *Id.* at 819.

Allstate argues that under the Texas Supreme Court's holding in *Brainard*, it was under no contractual obligation to pay Burgess any benefits before she obtained a judgment establishing the liability and underinsured status of the other motorist; that once Burgess obtained this coverage judgment, it promptly paid UIM policy limits; and consequently, that "there is no breach of contract" and, by extension, Burgess "cannot maintain common law or statutory bad faith claims based on [Allstate's] failure to pay benefits earlier than it did." In other words, Allstate contends that Burgess's claims fail as a matter of law because, in its view,

---

[4] Chapter 38 permits an insured to recover attorney's fees in a successful breach-of-contract suit against the insurer "unless attorney's fees are otherwise available." *Grapevine Excavation, Inc. v. Maryland Lloyds*, 35 S.W.3d 1, 5 (Tex. 2000); Tex. Civ. Prac. & Rem. Code § 38.001 ("A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . .(8) an oral or written contract."). To recover attorney's fees under Chapter 38, the claimant must show that he was represented by counsel and presented the claim and the "just amount owed" was not paid within thirty days of presentment. Tex. Civ. Prac. & Rem. Code § 38.002.

it had no duty to investigate or attempt to settle her UIM claim until she obtained a coverage judgment, and because it immediately paid the judgment. Thus, Allstate's reliance on *Brainard* is based on its assumption that a UIM carrier's extracontractual obligations to its insured attach when, but not before, its contractual obligation to pay the insured is established. That assumption, however, conflicts with the Texas Supreme Court's prior opinion in *Arnold v. National County Mutual Fire Insurance Co.*, 725 S.W.2d at 167-68, a case with a procedural posture similar to that presented here.

In *Arnold*, the insured made a demand for payment from his UIM insurer for policy limits after he was injured on his motorcycle by an uninsured motorist. *Id.* at 166. Although the uninsured motorist had admitted his fault and an independent insurance adjusting firm had recommended that the insurer pay the entire policy limit, the insurer denied Arnold's claim for UIM benefits. *Id.* Arnold subsequently sued and obtained a judgment against both the uninsured motorist and his insurer for $17,975. *Id.* The insurer then paid Arnold the $10,000 UIM policy limit. *Id.*

Arnold filed suit against his UIM insurance carrier for failing to handle his UIM claim in good faith. *Id.* After the trial court granted summary judgment in favor of the insurer, Arnold appealed. *Id.* at 168. On review, the Texas Supreme Court reversed the trial court's summary judgment, recognizing that

> [i]n the insurance context a special relationship arises out of the parties' unequal bargaining power and the nature of insurance contracts which would allow unscrupulous insurers to take advantage of their insureds' misfortunes in bargaining for settlement or resolution of claims. In addition, without such a cause of action insurers can arbitrarily deny coverage and delay payment of a claim with no more penalty than interest on the amount owed.

*Id.* at 167. The court held:

8

> A cause of action for breach of the duty of good faith and fair dealing is stated when it is alleged that there is no reasonable basis for denial of a claim or delay in payment or a failure on the part of the insurer to determine whether there is any reasonable basis for the denial or delay.

*Id.*

In short, the Texas Supreme Court in *Arnold* recognized the existence of extracontractual duties of good faith and fair dealing arising from an insurer's handling of a UIM claim—a claim that had been denied by the insurer *before* the insured obtained a judgment establishing coverage. *See id.* at 166. Subsequently, in *Brainard*, the Texas Supreme Court clarified that an insured's contractual obligation to pay UIM benefits does not arise until the insured obtains a judgment establishing coverage. 216 S.W.3d at 818. The court in *Brainard* did not, however, hold that an insurer's extracontractual duties arise when, but not before, the insurer's contractual duty to pay arises. *See id.* at 817-19. In fact, the *Brainard* court did not mention *Arnold* nor discuss the impact of its decision on Brainard's extracontractual claims, which had been severed from his coverage suit and remained pending. *See id.* at 811, 817-19. In the context of insurance disputes, it is well established that extracontractual claims, which sound in tort, are by their nature distinct and independent from coverage claims, which establish the insured's contractual liability. *Menchaca*, 545 S.W.3d at 489 ("An insured's claim for breach of an insurance contract is 'distinct' and 'independent' from claims that the insurer violated its extra-contractual common-law and statutory duties.") (citing *Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996) ("Insurance coverage claims and bad faith claims are by their nature independent.")); *In re Allstate Cnty. Mut. Ins. Co.*, 447 S.W.3d 497, 500 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding) ("Uninsured motorist claims and bad faith claims have been recognized as separate and distinct causes of action which might each constitute a

complete lawsuit within itself."); *In re American Nat'l Cnty. Mut. Ins. Co.*, 384 S.W.3d at 433 ("[I]t is well established that extra-contractual claims, such as bad faith claims, and contract claims related to insurance coverage are by their nature, independent claims that are subject to severance."). Consequently, we do not construe the court's holding in *Brainard* as expressly or implicitly abrogating *Arnold* with respect to whether extracontractual duties in UIM claims handling may attach prior to the insured's obtaining a coverage judgment. Allstate's reliance on *Brainard* is misplaced.

In addition, Allstate's position that extracontractual duties cannot attach before a coverage judgment is obtained is inconsistent with opinions from the Texas Supreme Court, this Court, and other courts of appeals, recognizing that in the context of UIM disputes, trial courts should generally sever and abate extracontractual claims pending resolution of an insured's coverage claim. *See In re State Farm Mut. Auto. Ins. Co.*, 629 S.W.3d 866, 877–78 (Tex. 2021) (orig. proceeding) (directing trial court to order bifurcated trials on issues of coverage and statutory claims); *In re American Nat'l Cnty. Mut. Ins. Co.*, 384 S.W.3d at 438 (directing trial court to sever and abate insured's extracontractual claims pending determination on coverage); *see also In re Allstate Fire & Cas. Ins. Co.*, No. 12-17-00266-CV, 2017 Tex. App. LEXIS 10428, at *4 (Tex. App.—Tyler Nov. 8, 2017, orig. proceeding) (mem. op.) (concluding that "extra-contractual claims must be severed and abated until the [UIM] breach of contract claim is determined"); *In re Progressive Cnty. Mut. Ins. Co.*, 439 S.W.3d 422, 426 (Tex. App.—Houston [1st Dist.] 2015, orig. proceeding) (same). The rationale for these decisions, at least in part, is that an insurer generally cannot be liable on bad faith claims arising from its denial or failure to investigate claims that it has no duty to pay, and that, as a result, an insured's extracontractual claims "may be rendered moot by a determination of underlying [non-]liability" on the coverage

10

claim. *In re State Farm Mut. Auto. Ins. Co.*, 629 S.W.3d at 876 (quoting *In re Allstate Fire & Cas. Ins. Co.*, 2017 Tex. App. LEXIS 10428, at *4); *In re American Nat'l Cnty. Mut. Ins. Co.*, 384 S.W.3d at 438 (explaining that insured's extracontractual claims could be rendered moot upon determination that insurer was not contractually obligated to pay UIM claim). In other words, a legal determination that an insured is not contractually entitled to UIM policy benefits generally bars the insured from proceeding on any extracontractual claims. Therefore, as a procedural matter, a severance and abatement of the extracontractual claims protects the insurer from having to "undergo the expense of litigating and conducting discovery that ultimately may be unnecessary." *In re State Farm Mut. Auto. Ins. Co.*, 629 S.W.3d at 877 (quoting *In re Colonial Cnty. Mut. Ins. Co.*, No. 01-19-00391-CV, 2019 Tex. App. LEXIS 9649, at *12 (Tex. App.—Houston [1st Dist.] Nov. 5, 2019, orig. proceeding) (mem. op.)); *see also In re Germania Ins. Co.*, No. 13-18-00102-CV, 2018 Tex. App. LEXIS 2834, at *11 (Tex. App.—Corpus Christi-Edinburg Apr. 23, 2018, orig. proceeding) (mem. op.) (requiring trial court to sever and abate extracontractual claims and explaining that "[i]f the causes were not severed, Germania would be required to put forth the effort and expense [of litigating] bad faith and other extra-contractual claims that could be rendered moot by the portion of the trial relating to breach of contract for [UIM] benefits").

Contrary to Allstate's suggestion, these severance-and-abatement cases do not stand for the proposition that a UIM insured cannot, as a matter of law, maintain extracontractual claims *based on conduct* in the handling of a UIM claim that occurs before the insured obtains a coverage judgment. In fact, these cases recognize that once the insured establishes that the UIM insurer is contractually obligated to pay benefits, the insured may then proceed to litigate her extracontractual claims. *In re State Farm Mut. Auto. Ins. Co.*, 629 S.W.3d at 870 ("A plaintiff

11

who succeeds in [the] first phase of the case may then proceed to litigate its Insurance Code claims in light of the results of the initial trial."); *see also In re State Farm Mut. Auto. Ins. Co.*, 614 S.W.3d 316, 329 (Tex. App.—Fort Worth 2020, orig. proceeding) (explaining that "[i]mplicit in these [severance and abatement] decisions . . . is a reasonable inference that the insurer's handling and adjustment of a claim for UM/UIM benefits may, in fact, become actionable, and such discovery permissible, if the insured obtains a judgment establishing the liability of the uninsured or underinsured motorist and damages resulting thereby in the underlying direct action"). In contrast, under Allstate's view, there would be no extracontractual claims to sever and abate in these cases because, at that point in the litigation, the issue of coverage has not been legally determined.

In support of its argument, Allstate also cites a federal case, *Weir v. Twin City Fire Insurance Co.*, for the proposition that it cannot be liable for failing to conduct a reasonable investigation or to effectuate a settlement because "it would be impossible to assess liability without the jury's input." 622 F. Supp.2d 483, 486 (S.D. Tex. 2009). In *Weir*, the federal district court relied on *Brainard* to hold that the UIM insurer could not be "guilty of not performing a proper investigation of [Weir's] UIM claim because it is the trial of the UIM claim, at which it will be determined who was at fault and the amount of damages, that constitutes the investigation." *Id.* Similarly, the court held that the UIM insurer could not be liable "for bad faith claim handling because it denied or postponed paying Weir's claim" because "until the conditions precedent to the existence of the duty to pay for coverage, there is no duty to pay." *Id.* The court's decision in *Weir* is based on an interpretation and extension of the court's holding in *Brainard* that, as we have explained, is not supported by the relevant case law and conflicts with the Texas Supreme Court's decision in *Arnold*. Consequently, we decline to follow

12

*Weir* and similar cases that fail to recognize that a UIM carrier's extracontractual obligations to its insured may attach before its contractual obligation to pay benefits is established.[5]

Instead, we join those Texas courts of appeals and federal courts that have rejected the arguments advanced by Allstate in this appeal. *See, e.g.*, *Hamburger v. State Farm Mut. Auto Ins. Co.*, 361 F.3d 875, 880-81 (5th Cir. 2004); *Valdez v. Allstate Fire & Cas. Ins. Co.*, No. SA-21-CV-00494-XR, 2021 U.S. Dist. LEXIS 181777, at *14-15 (W.D. Tex. Sept. 22, 2021) (order); *James v. Allstate Fire & Cas. Ins. Co.*, 475 F. Supp.3d 578, 585 (N.D. Tex. 2020); *Accardo v. American First Lloyds Ins. Co.*, No. H-11-0008, 2012 U.S. Dist. LEXIS 62181, at *14 (S.D. Tex. May 3, 2012); *In re State Farm Mut. Auto. Ins. Co.*, 614 S.W.3d at 362; *State Farm Mut. Auto Ass'n v. Cook*, 591 S.W.3d 677, 683 (Tex. App.—San Antonio 2019, no. pet.). In *Hamburger v. State Farm Mutual Auto Insurance Co.*, the insurer argued that "coverage of Hamburger's UIM claim was not reasonably clear until the jury determined the extent of Hamburger's damages caused by the other driver" and that, as a result, "no bad faith liability could attach for [the insurance carrier's] failure to settle the claim prior to [that determination]." 361 F.3d at 880-81. The Fifth Circuit rejected this argument. *Id.* at 881. The court observed that under Texas law, once the judgment against the insurer is signed, there are no longer any duties of good faith, and the legal relationship between the insured and insurer becomes one of judgment debtor and creditor. *Id.* at 880-81 (citing *Mid-Century Ins. Co. v. Boyte*, 80 S.W.3d 546, 549 (Tex. 2002)). The court reasoned that if State Farm's interpretation of "reasonably clear" were adopted, "insureds such as Hamburger could never successfully assert a bad faith claim against

---

[5] In *Bryant v. Progressive County Mutual Insurance Co.*, No. 05-17-01023-CV, 2018 Tex. App. LEXIS 10258, at * 14-21 (Tex. App.—Dallas Dec. 12, 2018, no pet.) (mem. op.), our sister court relied on *Brainard* and *Weir* to conclude that the insurer did not breach any obligation to make a reasonable offer or to conduct a reasonable investigation because it had no duty to do so until coverage was legally established.

his insurer for failing to attempt a fair settlement of a UIM claim." *Id.* at 881. As a result, the court declined to adopt that interpretation, "[a]bsent a more clear indication from Texas courts that liability cannot be reasonably clear . . . until the insured is found in a legal proceeding to be entitled to recover." *Id.*; *see also Woods v. Argonaut Midwest Ins. Co.*, No. 6:15-CV-139, 2016 U.S. Dist. LEXIS 192371, at \*11 (E.D. Tex. Mar. 18, 2016) (order) (explaining that *Brainard* does not call into question *Hamburger*'s holding because *Brainard* addresses "legally entitled to recover" phrase whereas *Hamburger* focuses on "reasonably clear" phrase); *see also James.*, 475 F. Supp. 3d at 585 (explaining that "*Brainard* does not negate the Fifth Circuit's analysis in *Hamburger*"). Although *Hamburger* and other federal cases on this issue are not binding on this Court, we find their reasoning persuasive. *See Cook*, 591 S.W.3d at 683 (concluding that *Hamburger* and subsequent federal cases provide "the better reasoned analysis" (citing *Davenport v. Garcia*, 834 S.W.2d 4, 20 (Tex. 1992) ("Texas should borrow from well-reasoned and persuasive federal procedural and substantive precedent when this is deemed helpful . . . ."))). We agree that if we were to adopt Allstate's view of *Brainard* and its interpretation of the phrase "reasonably clear," we would effectively eliminate claims for common-law and statutory bad faith for insureds, like Burgess, who obtain a coverage judgment against their insurer after their insurer denies their claim for benefits.

The Texas Supreme Court has long recognized that there "is a disparity of bargaining power inherent in the insurer-insured relationship," *Boyte*, 80 S.W.3d at 548, and that "insureds who encounter losses they believe to be covered will often be particularly vulnerable to an insurer's arbitrary or unscrupulous conduct," *Universal Life Ins. Co. v. Giles*, 950 S.W.2d 48, 53 (Tex. 1997). As a result, when an insurer unreasonably or arbitrarily denies a UIM claim, the insured may be inclined to drop or settle the claim for much less than what she believes is

14

covered, "rather than suffer the emotional and financial burden of litigat[ing]" the issue of coverage. *See id.* To guard against the potential for abuse created by this dynamic, we hold that an insurer may be liable for common-law bad faith and for unfair settlement practices under Chapter 541 of the Insurance Code when it delays payment on a claim for UIM benefits until the insured has obtained legal determinations as to the liability and underinsured status of the third-party motorists. *See Arnold*, 725 S.W.2d at 167.

In reaching this conclusion, however, we are not suggesting that every denial of a claim prior to a determination of UIM coverage is tortious and actionable. *Provident Am. Ins. Co. v. Castaneda*, 988 S.W.2d 189, 197 (Tex. 1998) ("But not every erroneous denial of a claim subjects an insurer to liability . . . ."). "Evidence that merely shows a bona fide dispute about the insurer's liability on the contract does not rise to the level of bad faith." *Transportation Ins. Co. v. Moriel*, 879 S.W.2d. 10, 18 (Tex. 1994). On the other hand, when a reasonable investigation reveals that an insurer's liability is reasonably clear, an insurer may act in bad faith by denying or delaying the UIM claim and insisting that the insured obtain a legal determination as to coverage. *In re State Farm Mut. Auto. Ins. Co.*, 614 S.W.3d at 362 (concluding that insurer breaches duty of good faith and fair dealing by denying or delaying UIM claim "until after rendition of a binding judgment of liability and damages when its liability was reasonably clear before the filing of the insured's direct action"); *Accardo*, 2012 U.S. Dist. LEXIS 62181, at *14 (insurer may act in bad faith by "delaying payment and insisting that the insured litigate liability and damages before paying benefits on a claim"); *see also Giles*, 950 S.W.2d at 56 (explaining that whether liability is "reasonably clear" is generally question of fact); *Arnold*, 725 S.W.2d at 167 (concluding that insured met summary-judgment burden to show that insurer "had no reasonable basis for its refusal to pay his [UIM] claim and with actual knowledge of that, forced

15

him to a trial on the accident before it would pay the claim"). The trial court erred to the extent it concluded otherwise and granted summary judgment in favor of Allstate on this ground.

### *Independent Injury*

On appeal, Allstate also argues that there is an additional ground upon which we may uphold the trial court's summary judgment. *See Knott*, 128 S.W.3d at 216 (explaining that when trial court does not specify grounds for granting summary judgment, appellate court must affirm summary judgment "if any of the theories presented to the trial court and preserved for appellate review are meritorious"). Allstate contends that under the facts presented in this case, Burgess's claims fail as a matter of law because she did not lose any policy benefits, Allstate having promptly paid policy limits once she obtained a coverage judgment, and because Burgess has not "asserted a claim for an injury independent of her right to receive policy benefits." Liberally construed, Allstate argues that Burgess's claims fail as a matter of law because she has not alleged an injury for which she may recover damages as a result of Allstate's alleged failure to pay benefits earlier than it did. In response, Burgess asserts that this issue has not been adequately preserved for appellate review because Allstate did not raise this "novel argument at the trial court level or in its pre-submission briefing," and that even if the issue has been preserved, Burgess has sufficiently alleged that she has suffered a recoverable injury.

Summary judgments may only be granted upon grounds expressly asserted in the summary-judgment motion. *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011); *see* Tex. R. Civ. P. 166a(c). Consequently, we cannot affirm a summary judgment on grounds not expressly set out in the summary-judgment motion. *Henkel v. Norman*, 441 S.W.3d 249, 251 n.1 (Tex. 2014) (per curiam). Here, Allstate emphasizes in its motion for summary judgment that it

16

paid policy benefits promptly after Burgess obtained a judgment establishing coverage. Allstate does not, however, discuss the concept of "independent injury" or assert that Burgess has failed to allege an injury for which she could recover on her extracontractual claims. In other words, Allstate's motion for summary judgment does not specifically raise the issue of damages or the legal effect of its payment of the coverage judgment, other than to suggest that its payment affirmatively demonstrates compliance with any extracontractual duty that arose post judgment. Nevertheless, even assuming without deciding that this alternative ground for granting summary judgment was adequately preserved by Allstate in the trial court, we could not affirm the trial court's summary judgment on this ground.

In *Menchaca*, the Texas Supreme Court recognized two paths an insured may take to establish damages caused by an insurer's violation of the Insurance Code. *In re State Farm Mut. Auto. Ins. Co*., 629 S.W.3d at 872–73 (discussing *Menchaca*, 545 S.W.3d at 495-500). The insured must establish either (1) "a right to receive benefits under the policy" or (2) "an injury independent of a right to benefits." *Id.* (quoting *Menchaca*, 545 S.W.3d at 500). Under the first path, if an insured "establishes a right to receive benefits under the insurance policy, [he] can recover those benefits as actual damages under the Insurance Code if the insurer's statutory violation causes the loss of benefits." *Id*. (quoting *Menchaca*, 545 S.W.3d at 495). Under the second path, "if an insurer's statutory violation causes an injury independent of the insured's right to recover policy benefits, the insured may recover damages for that injury even if the policy does not entitle the insured to receive benefits." *Id*. (quoting *Menchaca*, 545 S.W.3d at 499). Because these are the only paths to establishing damages, "[a]n insured cannot recover *any* damages based on an insurer's statutory violation if the insured had no right to receive

17

benefits under the policy and sustained no injury independent of a right to benefits." *Id.* (quoting *Menchaca*, 545 S.W.3d at 489).

As to whether Burgess may proceed under the first path, there is no dispute that Burgess had a "right to receive benefits under the policy"—the coverage judgment legally established that she did. Thus, the issue is whether Burgess has received all the policy benefits to which she was entitled and thus no benefits remain to be recovered. *See Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 134 (Tex. 2019) (discussing *Menchaca* and concluding that even if insured had "right to benefits," only damages sought were for policy benefits, "and those benefits have already been paid"); *see also Park Bd. Ltd. v. State Auto. Mut. Ins. Co.*, No. 4:18-CV-382, 2019 U.S. Dist. LEXIS 135674, at *11 (E.D. Tex. Aug. 12, 2019) (explaining that insured's "extra-contractual claims are moot to the extent they seek damages for policy benefits that State Auto paid following the appraisal process (citing *Ortiz*, 589 S.W.3d at 134)). If no unpaid benefits remain, then to prevail on her extracontractual claims, Burgess must allege and then prove some injury independent of a right to benefits. *See also Menchaca*, 545 S.W.3d at 500 ("The second aspect of the independent-injury rule is that an insurer's statutory violation does not permit the insured to recover *any* damages beyond policy benefits unless the violation causes an injury that is independent from the loss of the benefits.")

An independent injury is an injury or loss "caused by" the insurer's conduct that results in damages that "are separate from and . . . differ from benefits under the contract." *Id.* at 499. "If such damages result from an independent injury 'caused by' the insurer's statutory violation, the insured can recover those damages, just as insureds have always been able to recover 'compensatory damages for the tort of bad faith' under the common law." *Id.* (quoting *Moriel*, 879 S.W.2d at 17). "Thus, an insured can recover actual damages caused by the

18

insurer's bad-faith conduct if the damages 'are separate from and . . . differ from benefits under the contract.'" *Id.* (quoting *Twin City Fire Ins. Co. v. Davis*, 904 S.W.2d 663, 666 (Tex. 1995) (identifying mental anguish damages as example of recoverable actual damages)).

Here, Burgess argues that she has alleged an "independent injury" because she seeks to recover for mental anguish sustained as a result of Allstate's tortious conduct in delaying payment on her claim. The Texas Supreme Court has recognized that mental anguish damages may be recovered for successful common law and statutory bad-faith claims.[6] *See Twin City Fire Ins. Co.*, 904 S.W.2d at 665 (noting that "exemplary damages and mental anguish damages are recoverable for a breach of the duty of good faith and fair dealing under the same principles allowing recovery of those damages in other tort actions" (quoting *Arnold*, 725 S.W.2d at 168)); *Giles*, 950 S.W.2d at 54 ("In the context of bad faith actions, mental anguish damages will be limited to those cases in which the denial or delay in payment of a claim has seriously disrupted the insured's life."). Moreover, as our sister court in Houston has recently recognized, "*Menchaca* did not foreclose the possibility of recovery of mental-anguish damages as an independent injury." *State Farm Lloyds v. Fuentes*, 597 S.W.3d 925, 941 (Tex. App.—Houston [14th Dist.] 2020, no pet.). Because Burgess alleges that she has suffered mental

---

[6] Allstate emphasizes that, in *Menchaca*, the Texas Supreme Court explained that a successful independent-injury claim would be rare and that the court has "yet to encounter one." *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 500(Tex. 2018) (citing *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995)). That statement, however, concerns the availability of claims for independent injury when there is no coverage for the underlying loss. *See Progressive Cnty Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005) (explaining that insured's extracontractual claims "were negated by determination in the breach of contract claim that there was no coverage" and that although court had previously "left open the possibility [in *Stoker*] that an insurer's denial of a claim it was not obliged to pay might nevertheless be in bad faith if its conduct was extreme and produced damages unrelated to and independent of the policy claim," insured had not made such allegations). Here, it was legally established that Burgess's UIM claim was covered by her policy with Allstate.

anguish as a result of Allstate's conduct in handling her UIM claim, we agree that she has sufficiently alleged an injury independent of her right to recover policy benefits. Accordingly, even if Burgess has recovered all policy benefits to which she is entitled, she has sufficiently alleged an independent injury for which she may, if proven, recover damages. Assuming that this issue was raised below, we conclude that the trial court erred to the extent that it granted summary judgment in favor of Allstate on this ground.

## CONCLUSION

We reverse and remand those portions of the trial court's order granting summary judgment on Burgess's claims that Allstate breached its duty of good faith and fair dealing and that it violated Chapter 541 of the Insurance Code.

_____

Chari L. Kelly, Justice

Before Justices Goodwin, Baker, and Kelly

Reversed and Remanded

Filed: November 24, 2021